The opinion of the Court was drawn up by
Kent, J.
Horace Jenness, on the 2d of December, 1852, made his deed of mortgage to Webster Kelley, the intestate, of a township of land. The deed was in the usual form and contains the usual covenants of general warranty. It was given to secure payment of a note for eight thousand dollars, given by Jenness to Kelley. The deed was acknowledged and delivered on the 15th of June, 1853. At this time there was an incumbrance on the township, created by a prior mortgage to secure a note to S. H. Blake for STGdSfiA" given by Clark, who then had the title.
The original bill alleges that Blake, in July, 1860, received the amount then due, on that prior mortgage, from Jenness, and thereupon assigned the note and mortgage to Jenness, who still holds the same.
On such a state of facts, there could be no doubt that such payment would enure by way of estoppel, or implied trust, to the benefit of Jenness’ grantee, to whom he had conveyed with covenants of warranty. The mortgage, which' was paid, was an incumbrance, which was covered by the warranty, and it was the duty of Jenness to pay it and remove the incumbrance. The assignment of tire mortgage to him could give him no right to set it up against his grantee, but, if of any effect, it would bo held only in trust for Kelley. Equity would treat it as paid and discharged as to Kelley, on the simple principle that a person purchasing in and taking the assignment to himself, of an incumbrance which he was himself under an obligation to discharge, acquires in equity no title against one to whom he *464 was bound to remove the incumbrance. The common law doctrine of estoppel, where there are covenants in a deed, leads to the same conclusion. Kellog v. Wood, 4 Paige’s Ch. Rep., 589; Van Horne v. Crane, 1 Paige, 459; Bradley v. George, 2 Allen, 392.
But the respondents in this case say that there are other facts on which their rights must depend.
It is clearly established that the assignment, by Blake of his mortgage, was made to Jenness on the day the money was paid. It is also proved, and not denied, that Jenness, on the same day, executed an assignment, with a blank for the name of the assignee, and that afterwards the name of B. D. Hill, the respondent, was inserted therein.
We think that it is also proved that the sum of $4614x5(S8¡y which was paid to Blake on the day of the assignment, was furnished by Hill, was his money and was paid by his agent to obtain an assignment of the mortgage to himself and for his benefit. Jenness on that day paid nothing. It was not a loan of that money from Hill to Jenness, to enable him to pay the mortgage. Hill paid the money to obtain the assignment of the mortgage to himself, for his own use and benefit. Jenness negotiated the business until the time of payment, but he did it, as he says, for Hill. His object was to have the mortgage in some, person other than- the person then holding it. But Hill manifestly paid the money, not for Jenness’.benefit, but for his own. He expected an assignment to himself or to some one for his benefit. It would doubtless have been so made, if Mr. Blake had not promised the attorney for the complainant that he would assign to no one but Jenness.
On this state of facts, it is clear that, as between Jenness and Hill, the assignment to Jenness was for the use of Hill, and that a .resulting trust attached at once to the conveyance in favor of Hill. It is a settled doctrine that when a man purchases an estate with his own money, and the deed is taken in the name of another, a trust is implied by law, and this trust may be proved by parol. There are numerous *465 authorities in this State ; and in England and in other States, which sustain this principle. It is entirely unnecessary to cite them. They can be found in any digest.
But it is contended by the complainant, that although this may be so as between the two parties named, yet that Kelley’s legal rights could not be affected, and that when the legal assignment was made to Jenness, it instantly enured to the benefit of his grantee, by force of the estoppel created by his covenants. The question then is, did Jenness acquire such a title that, notwithstanding the implied trust, it enured to the benefit of Kelley.
It is important to observe the relations of all these parties. Kelley was not a subsequent purchaser, nor a creditor Avho had levied on the land, and therefore not within the saving provision of the statute in relation to implied trusts. K. S., c. 73, § 12. His right was to redeem that mortgage. This Avas all that was conveyed to him in fact. His other rights rested upon the covenants in the deed to him. His rights were not impaired or his situation changed by the transfers of the mortgage from Blaké to Hill. The complainant does not contend that they were, but insists that, by operation of law, the estate she represents has obtained the payment and discharge of the mortgage, Avithout paying any part of it. This, as we have seen, would have been the result, both legal and equitable, if Jenness had in fact and truth paid it, and the equitable rights of another party had not come in question.
Is a trust estate, or a conveyance charged with a trust, such an after acquired title as will enure to the benefit of one to whom the trustee had before conveyed in fee with covenants of warranty?
In the case of Jackson v. Mills, 13 Johns., 463, it was held, where one took a deed, merely as trustee for another, although absolute in form, and the consideration was paid by-the other, and thereupon he gave him a deed, that the latter deed was a mere execution of his trust and did not *466 operate as an estoppel to any title he might thereafter acquire in his own right to the same lands.
The case of Jackson v. Hoffman, 9 Cowen, 271, reaffirms the above case, and decides that estoppels do not apply, except between parties acting in the same character. In that case, the purchase was made by one in his individual capacity, and the covenant was made by him as administrator. Sinclair v. Jackson, 8 Cowen, 565, sustains the same view, and the Court say, — "A conveyance to operate as an estoppel, it is necessary that it should be in the same right with the former one. To estop, a conveyance must be by one claiming under and in right of identically the same power and the same estate as he first conveyed.”
If, as we have seen in the case before us, Jenness took the assignment of the mortgage charged with a trust, it was not in the same character and of the same estate as in his deed to Kelley. He was here a mere trustee. There can be no division or separation in the effect of the assignment. He did not take a conveyance and afterwards have engrafted thereon a trust, allowing the legal estate to vest absolutely and for a time, before any trust arose. The assignment was charged with the trust, as soon as executed.
Is a trust estate such an after acquired title as will enure by way of estoppel ? It would hardly be contended that a conveyance to one as trustee for the use and benefit of a charitable association, or a religious body, would thus enure. Nor where the conveyance creates a trust and declares it fully in the deed, and the purpose is to give the whole benefit of the estate to a party named and no 'personal benefit to the trustee.
But an implied trust is equally a trust for the benefit of another, as when the trust is declared in writing. It may require a different mode of proof to establish its existence, and it may be limited in case of purchasers without notice. But, being established, it follows the general rules and is subject to the doctrines applicable to trusts.
*467 A case very similar to this is found in 11 Ohio Reports, 316, Burchard v. Hubbard. It was where a person, who had no title, conveyed by deed of warranty, and afterwards received title as trustee from the owners, for the purpose of transmitting it to a bona fide purchaser. The Court say that, in suph a case, the doctrine of estoppel does not apply ; that a mere naked title was all that passed through him ; that the title was conveyed as a mere matter of convenience ; that it constituted him a mere trustee of the naked legal title; that a trust resulted to the party who paid the money: that, if he had acquired for himself the legal and equitable title, he would have been estopped by reason of the covenants, but it being a mere trust estate no such estoppel can apply.
A doctrine analogous to this is found in those cases whore the party taking the deed is a mere conduit of the title, an instrument by whom the title is to be taken to carry out the understanding of the parties, he, in fact, having no real interest. In such cases it has been hold that the title would not enure to the benefit of a former grantee. Runlet v. Otis, 2 N. H., 167; Marsh v. Rice, 1 N. H., 167.
Another analogy may be found in the well established doctrine that the widow of a mere trustee is not dowable in equity of the trust estate. All these cases rest upon the general principle, that the estate must be acquired by the warrantor or husband, in fact and substance as his own property, without intervening rights in third parties, and not as mere trustee for another’s use, or as a mere conduit of title. Whilst the law is careful to see that an after acquired title, purchased and paid for by the warrantor shall enure, it is equally careful to guard against any unequitable result by enforcing the rule, where the substance is wanting and the rights of others are impaired.
The complainant contends that the trust is not sustained, because, she says, the whole consideration of the transfer did not come from Hill.
It was decided in some of the earlier cases that, unless the *468 whole consideration moved from one person, no implied trust would arise. But this doctrine has been repudiated. It is now held that such a trust may arise where several persons furnish the money, if the portions of each can be defined clearly. But where this is uncertain, and no satisfactory evidence is offered, showing the portion of each, no trust can be established. Baker v. Vining, 30 Maine, 121.
The same case also clearly states the foundation of the rule as to implied trusts to be payment of the money. It raises a trust to the extent of that payment, if the same was due and rightfully paid — but not beyond this.
The proof in the case shows that the amount actually paid by Hill at the time of the assignment was $4614^^, the consideration named in the assignment to Jenness was $5138. On examination of the evidence, we are satisfied that Jenness and others had paid to Blake certain sums amounting to $1700 — which had not been indorsed on the note. There was an understanding, not very definite, that some extra interest or consideration for delay should be paid or allowed B.lake, and he held this sum to await a settlement. It was arranged, as Mr. Blake testifies, that he should retain these sums amounting to $1700, but as this sum exceeded by more than $500, what was finally fixed upon as his extra, he would take and did take of Jenness, the sum of $4614XW By this arrangement the $500 (more or less) was deducted from the amount due on the mortgage.
It is clear that the whole $1700 was paid to Blake towards the mortgage debt, and the understanding as to extra interest. This was paid by Jenness, or those interested to pay it. The $500 balance at least should have been indorsed on the note, for it was paid in on that debt, and it was admitted that at most but $1100 of the $1700 was required "to protect the extra interest,” leaving $500, more or less, to be appropriated towards the principal and legal interest. Blake agreed to consider it as a payment and received the sum apparently due, less this sum of $500. We can see no differ *469 ence in effect, if lie had actually indorsed the amount on. the note.
It will not be disputed, that if Jenness had paid all the debt, except one hundred dollars, and Hill had paid this $100 to Blake, and to Jenness the seven or eight thousand dollars which had been before paid by him, that no implied trust on an assignment to Jenness would arise, beyond the one hundred dollars. As between Kelley and Jenness, as we have seen, it was Jenness’ duty to pay all the debt. Whatever he did pay in fact on this note to Blake was a payment for the benefit of Kelley. If Hill did afterwards pay Jenness the five hundred dollars, it gave him no right against Kelley. It is the same in effect as if he had paid to Jenness the amount of any prior payments made years before, to Blake. What had been paid by Jenness or others on the note before assignment, which Blake was bound to account for as payment, was fixed in favor of Kelley, and must be accounted for, and no resulting trust as to such payments could arise in favor of Hill. Whether any more than the balance of $500 of the $1700 should be allowed as payment on the note, we are not now called upon to determine.' If any question on this point is made, it may be determined on the coming in of the master’s report.
It being admitted that the complainant has a right to redeem, a decree to that effect may be entered. The case will be referred to a master to determine the amount duo on the principles before stated, unless the parties can agree upon the sum. The complainant is entitled to costs.
Appleton, C. J., Eioe, Cutting, Davis and Walton* JJ., concurred.