OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1899,

AND IN THE FIFTY-THIRD YEAR OF THE STATE.

---

B. F. Culp, Appellant, v. William W. Price and Watkins W. Price, Intervener.

**Resulting Trusts:** EVIDENCE. Where a father was unable to state where he procured the money with which he claimed to have purchased land, the title to which he took in the name of his son, and told the grantor and others that the son furnished the money and had an interest in the land, a resulting trust will not be created in favor of the father as against the son's creditors.

**Same.** Where a father and son purchased land jointly, each furnishing part of the consideration, and the title to the whole was taken in the name of the son, a resulting trust will not arise in favor of the father as against the son's creditors, where he was unable to prove the definite amounts paid by himself and his son, so that the aliquot part of the land to which he was entitled could be ascertained.

PAROL PROOF. Code, 1873, section 1934, requiring the creation of trusts in real property to be executed in writing, does not apply to trusts resulting by operation of law, which may be established by parol.

ADVANCEMENTS. Where a father purchased and paid for land, but took the title in the name of his son, without any arrangement or consultation with him, a resulting trust will arise in favor of the father, unless the transaction was intended as an advancement to the son.

SAME. Land purchased and paid for by a father, but the title to which was taken in the name of the son, will be presumed to have been an advancement to the son, in the absence of satisfactory proof that a resulting trust is intended.

RULE APPLIED: Lands were purchased by a father who was illiterate, and paid for from moneys derived from the sale of his homestead; the title being taken in the name of his son, who was possessed of means and who was well educated. The father testified that his reason for so doing was that he was illiterate, and that his son was better able to care for the property. The father had other minor children who were not provided for, and the deeds were not delivered to the son, but to a creditor of the father, as security for a loan to him. The land was rough, and had to be cleared at much expense, which the father paid. The son aided in the erection of a new house thereon, but at that time he was indebted to his father for more than the amount expended. *Held,* that the conveyances were not an advancement to the son.

*Appeal from Van Buren District Court.*—HON. T. M. FEE, Judge.

WEDNESDAY, JANUARY 18, 1899.

ACTION against William W. Price on a promissory note for fourteen thousand dollars, executed September 2, 1892, payable one year after date. As the defendant was a nonresident of the state, a writ of attachment was sued out and levied on six hundred and thirty acres of land supposed to belong to him. Watkins W. Price filed a petition of intervention, alleging ownership of the lands attached, and that those in the name of William W. Price were held in trust. Issue was joined on this petition of intervention, and the cause transferred to the equity side of the calendar. The

district court adjudged one hundred and ten acres of the land and an undivided one-fourth of four acres the property of William W. Price, and subject to the attachment lien, and that the remainder belonged to Watkins W. Price, and, as to that, dissolved the writ of attachment. The plaintiff appeals.—*Modified* and *affirmed.*

*Amos Miller* and *Wherry & Walker* for appellant.

*Mitchell & Sloan* and *Ben Johnston* for appellee.

LADD, J.—As the evidence shows, without dispute, the fifty acres of land bought of Woodward and the forty acres bought of the referees to have been paid for by Watkins W. Price, and the title to have been taken in his name, and that the four acres, containing the quarry and bought of Woodward, were purchased and paid for by the partnership composed of William W., Watkins W., John M., and John R. Price, and William held the title thereto as trustee, we may eliminate these from our investigation, and confine our attention to the remaining land involved in this appeal. At the outset it may be well to call attention to the controlling principles of law applicable to the case. It is the contention of Watkins W. Price that he negotiated the purchase of each parcel of land, paid the entire consideration therefor, and took the conveyance in his son William's name in trust for himself. The objection of the plaintiff to all evidence tending so to prove, because of section 1934 of the Code of 1873, must be overruled. That section expressly excludes from its provisions, requiring any declarations or creations of trusts or powers in relation to real estate to be executed in writing, trusts resulting from the operation or construction of law. There was no arrangement whatever between the father and William with reference to the son taking the title. The evidence tended to show that Watkins W. Price had purchased and paid for the land, and taken it in his son's name, without consultation with the

latter. That this would constitute a resulting trust, if not held to be an advancement, is settled by the authorities. *Lindley v. Martindale,* 78 Iowa, 379; *Cotton v. Wood,* 25 Iowa, 43; *Dunn v. Zwilling,* 94 Iowa, 233; *Noel v. Noel,* 1 Iowa, 423; *Byers v. Johnson,* 89 Iowa, 278; *Sunderland v. Sunderland,* 19 Iowa, 328; *Cecil v. Beaver,* 28 Iowa, 241; 1 Perry Trusts, sections 126-145. Before the legal title will be disturbed, however, the resulting trust must be established by clear and satisfactory evidence, and the presumption which the law raises, that the conveyance is by the way of an advancement when taken in the name of a child, must be overcome by proof of a contrary intention.

II. As to lands paid for by the intervener, the important inquiry is whether the presumption of an advancement, raised by the conveyance to the son, has been overcome by the evidence. This is purely a question of intention. What was the purpose of the father at the time the deeds were taken? His testimony of his intention in having the conveyance made to William is competent, as are also his declarations made at the time. *Devoy v. Devoy,* 3 Smale & G. 403; *Stone v. Stone,* 3 Jur. (N. S.) 708; 1 Perry Trusts, section 147. The explanation of so taking the deed to the eighty acres bought of Fullmer W. Fellows by the intervener is, in substance, the same as that given concerning each parcel: "I thought he was more able to take care of that than I was, and I put the deed in William's name. He was a good scholar, and, if something was to happen, I thought he would take better care of it than myself." He made similar declarations at the time of receiving several of the deeds. To him, illiterate and unable to write his own name, these reasons may well have seemed satisfactory. Certainly they do not indicate a purpose of depriving himself and family of all their property, and conferring it on a son, who was well educated and capable of caring for himself. This Fellows land was purchased with the proceeds derived from the sale

of his homestead at Beacon, and had been occupied by him
since 1885.   At that time it was all the property he had.
His family consisted of his wife, two daughters, and a son,
other than William, under the age of majority.   The fact that
the child is already provided for, though not alone sufficient,
has been deemed a circumstance to be considered in such
cases.  We are of the opinion that the circumstance that the
father and other children were left unprovided for, in event
the conveyance is construed to be an advancement, is to be
given weight in determining his purpose.   At that time
William is shown to have had large amounts of money in his
possession.  Moreover, the deeds of these lands were never in
the possession of William, but were delivered by his father,
upon their execution, to John M. Price, as a sort of security
for the payment of two thousand one hundred dollars bor-
rowed by intervener from him.    While this transaction did
not furnish the security intended, it was a contemporaneous
act of the purchaser, somewhat inconsistent with the idea of
an advancement and proper to be considered.    1 Perry
Trusts, section 146.   While possession of land by the par-
ent may well be accounted for on the score of the submission
and respect due from the adult child, the circumstances
thereof may throw some light on the intention of the parties.
Much of this land was overgrown with brush and timber, and
the evidence shows that it has been reduced to a state of cul-
tivation at an expense of seven or eight dollars per acre, and
that valuable buildings have been constructed.  These expen-
ditures, while explainable because necessary to obtain the
profits of the land, are not such as would ordinarily be made
by one not the owner.   It is true that William aided in the
erection of a new house.  This appears to have been done to
insure his aged parents a comfortable dwelling rather than to
improve property claimed by him.   Besides, at that time he
was debtor to his father for more than the amount expended.
From a careful examination of the record, we are constrained
to hold that none of the conveyances were taken in William's

name by way of an advancement. Any one of the circumstances, taken alone, may be insufficient to rebut the presumption raised by the law, but when considered together quite satisfactorily indicate that Watkins W. Price was acting, in his judgment, for his own benefit, and without the intention of giving anything to William.

III.   What is known as the "Miller Land," being sixty acres deeded by Jacob Miller and wife, March 12, 1889, to W. W. Price, is claimed by the intervener, and he insists that he paid for it, though he is unable to say from what source he obtained any of the money. On the contrary, Miller testified that the intervener told him that William was to furnish the money for the land. At that time one Carry Fisher was working for the intervener, and she also testifies that he told her that his son William was furnishing the money. These conversations are not denied. The intervener conceded that some of this money may have come from William through his mother, but insists that it was in payment of the debt due his father. There is not the slightest evidence tending to show that William sent any money in payment of a debt due Watkins. The latter had told Snyder and Duffield that he owned the eighty on which he lived, and the evidence tends to show that he had said to others that William had an interest in the land. Miller testified that William had talked to him several times about buying it. While the bank books were not offered in evidence and the money received by Mrs. Price was not traced to this land, it is yet a curious coincidence that on February 27, 1889, a draft of one thousand dollars from William was deposited to her credit, and on April 8th one thousand dollars was drawn therefrom by her in favor of Jacob Miller. Of the one thousand two hundred and fifty dollars, the price of the land, two hundred and fifty dollars was paid at the date of the deed. We think the intervener has failed to show that he made the payment for this land, by that clear and satisfactory proof required.

IV.   A deed of one hundred and sixty acres was executed to William W. Price by Williams and Griffith, October 2, 1889.   That the consideration of one thousand three hundred and fifty dollars was handled by the intervener cannot be questioned.   But he does not claim to have paid for this land entirely out of his own :funds.   He made the contract, and William had nothing to do with that.   He says: "My money paid for it.   As to where I got the money, it was accumulated. I do not know which way, but I know it is hard for me to remember all these items.   I cannot mention it.   I got some money from William; yes, I did.   I got some money from William to pay for it.   I don't know how much I got of William.   I trusted that to his honer.   *   *   * . I left it to his honor, when he would settle up with me.   I took the deed in William's name, because, as I told before, I thought it would be safer.   I was no scholar, and it was my own doings in doing it."   William was not in the country at the time.   This land has been cleared.   This, in substance, is all the evidence on the subject, and the question arises. whether, in view of the fact that William furnished a part of the purchase price and Watkins a part of it, the portions being uncertain, a trust in the land may be declared.

The theory of the resulting trust is that he who supplies the purchase money intends it to be for his own benefit, and not for that of another, and that the conveyance is taken in the name of another as a matter of convenience or arrangement between them.   If two or more advance the price, and the deed is taken in the name of one only, a trust will result in favor of the other for shares proportionate to the part of the price paid.   It has been held that the payment, to raise a trust *pro tanto,* must be for an aliquot part of the real estate.   *McGowan v. McGowan,* 14 Gray 119; *Shaffer v. Fetty,* 30 W. Va. 248 (4 S. E. Rep. 278); *Bibb v. Hunter,* 79 Ala. 351; *Olcott v. Bynum,* 17 Wall. 44; *Sayre v. Townsends,* 15 Wend. 647; *Perry v. McHenry,* 13 Ill. 227; *Baker v Vining,* 30 Me. 121 (50 Am. Dec. 617).   The reasons for

this rule are concisely stated in *White v. Carpenter,* 2 Paige, 240: "The principle is that the whole consideration for the whole estate, or for the moiety, the third, or some other definite part of the whole, must be paid to be the foundation of a resulting trust; and that the contribution or payment of a sum of money generally for the estate, when such payment does not constitute the whole consideration, does not raise a trust by operation of law for him who pays it; that the reason of the distinction obviously is that neither the entire interest in the whole estate, nor in any given part of it, could result from any such a payment to the party who makes it, without injustice to the grantee by whom the residue of the consideration is contributed." But so strict a rule has been much impinged by the liberality of the courts in determining what will establish payment for an aliquot part, and, in the more recent cases, the presumption has been indulged that each party contributing to the purchase intended to pay for that portion of the land his contribution bears to the entire price paid. *Parker v. Coop,* 60 Tex. 111; *Buck v. Swazey,* 35 Me. 48; *Clark v. Clark,* 43 Vt. 688; *Latham v. Henderson,* 47 Ill. 186; *Dudley v. Bachelder,* 53 Me. 403. See cases collected in 10 Am. & Eng. Enc. Law, 15. An examination of the cases indicates that courts have proceeded with much caution in establishing trusts by oral evidence, because of the danger of such proof as tending to perjury and the insecurity of paper titles. Strict proof has been required, and no uncertainty tolerated. In *Baker v. Vining,* 30 Me. 121 (50 Am. Dec. 620), it was said: "No case has been found where a resulting trust has been held to arise upon payments made in common, by the one asserting his claim and the grantee in the deed, wherein the grantor acknowledges the receipt of the consideration for him alone, when the amount belonging to one and the other is uncertain and unknown, even to those who made the payments, and no satisfactory evidence is offered exhibiting the portion which was really the property of each. The trust springs from the presumption of law,

because the alleged *cestui que* trust has paid the money. Such presumption must be attended with no uncertainty." In *Bibb v. Hunter*, 79 Ala. 361, the rule is thus stated: "A comparison of the authorities shows that these general statements may be harmonized by being understood as subject to the qualification that when a partial payment, being a definite aliquot part of the consideration, is made a trust in a corresponding aliquot part of the consideration of the land will result; but unless the payment be of an aliquot part—it the amount be indefinite or uncertain—no trust results by implication of law." In *Olcott v. Bynum*, 17 Wall 59, it was remarked: "There must be no uncertainty as to the proportion of the property to which the trust extends." This rule requiring proof of the contribution of definite amounts making up the entire price or an aliquot part of the whole, from which the payment of an aliquot share of the land may be inferred, is also declared in the following cases: *Perry v. McHenry*, 13 Ill. 233; *Kelley v. Jenness*, 50 Me. 468; *Dudley v. Bachelder*, 50 Me. 408; *Reynolds v. Morris*, 7 Ohio St. 310; *Pierce v. Pierce*, 7 B. Mon. 433. *Shoemaker v. Smith*, 11 Humph. 81, has been thought to announce a contrary doctrine. There the defendant entered land in his own name, with the understanding that he and the complainant should be jointly interested therein, and of the consideration the complainant contributed "perhaps about one-half or nearly that amount." It was held, in the light of these facts and in the absence of proof to the contrary, that the law presumed that they contributed equally. This conclusion must have been based somewhat on the fact that they were to take jointly, which implied equal parts; for, if the payment was made for an aliquot part, the amount paid would not be controlling. But in *Edwards v. Edwards*, 39 Pa. St. 369, the plaintiff had contributed an uncertain sum to the purchase price. The *nisi prius* court, being unable to ascertain the share each party had paid, ordered an accounting, but each party refused to introduce any more evidence. The

supreme court was unable to determine what portion of the purchase price each had paid, and, as the litigants were brothers, presumed each to have contributed the same amount, basing its conclusion on the *Tennessee Case*. The court seems to concede the rule involved a hardship, as the evidence indicated the one contributed much less than the other, and seems to justify the ruling on the ground of the refusal of the parties to establish their accounts. We may suggest that, the burden being on the party alleging the trust to clearly establish it, his failure to do so would not seem to furnish an adequate reason for granting him relief he had not proven himself entitled to. Equality does not appear from this opinion to have been equity. Indeed, experience does not justify the inference that several parties buying property contribute in equal amounts, and such a presumption ought not to be indulged in order to devest the legal title. There is no hardship in holding parties to proof of facts from which payment for an aliquot part may, at least, be reasonably inferred. We have found no case approving the doctrine of *Edwards v. Edwards, supra,* and certainly it is in conflict with the authorities hereinbefore cited. It should not, in any event, be extended to a case where the alleged *cestui que* trust is seeking to establish a trust as against the creditors of the trustee. As the plaintiff failed to prove the definite amounts paid by himself and son, a trust will not be presumed.

V. We are convinced, from an examination of the record, that the intervener furnished the means with which to purchase the lands bought of Parker, Fellows, Spencer, and Swiers. The decree of the district court will be so modified as to subject that bought of John Williams and James Griffith and of Jacob Miller to the lien of the writ of attachment, and in other respects it is affirmed.—MODIFIED and AFFIRMED.