NEWTON et al. v. EASTERWOOD.

(Court of Civil Appeals of Texas. Texarkana. Feb. 6, 1913. On Motion for Rehearing, March 6, 1913.)

1. APPEAL AND ERROR (§ 854*)—REVIEW—GROUNDS OF JUDGMENT.

A judgment clearly right should be sustained on appeal, regardless of the grounds assigned by the trial judge.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3424, 3427–3430; Dec. Dig. § 854.*]

2. ESTOPPEL (§ 38*)—PROPERTY CONVEYED—AFTER-ACQUIRED TITLE.

Where, after conveying land by warranty deed, the grantors acquired title at sheriff's sale under a claim of subrogation under a mortgage previously given by themselves and a deceased brother, such title passed to their vendee, if the judgment under which the sale was made was valid.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 99–107; Dec. Dig. § 38.*]

3. DESCENT AND DISTRIBUTION (§ 129*) — DEBTS OF INTESTATE—MORTGAGES.

On the death of one of three joint mortgagors, the indebtedness remained a claim against decedent's estate; his property descending to his heirs burdened with that debt and the mortgage given to secure its payment.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 471; Dec. Dig. § 129.*]

4. SUBROGATION (§ 41*)—PAYMENT BY JOINT MORTGAGOR—EVIDENCE—SUFFICIENCY.

Evidence held to show that a minor's guardian paid out of the minor's funds an amount due from the minor's father on account of a mortgage executed by him jointly with his brothers, precluding a subsequent claim by the brothers of right to subrogation under the mortgage on account of having paid the entire debt.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 109–118; Dec. Dig. § 41.*]

5. INFANTS (§ 42*) — JUDGMENT AGAINST WARD — SALE OF PROPERTY — DEED—VALIDITY.

After the death of one of three brothers, who jointly owned land, the survivors sued decedent's minor heir, then an infant, to foreclose a lien claimed by subrogation under a mortgage given by the three brothers, though the amount due from decedent had been paid

out of funds in the hands of one of the surviving brothers as guardian of the minor. *Held*, that a deed taken by the surviving brothers at sheriff's sale under such foreclosure was void, and subject to attack in an action by the minor, after removal of his disabilities, brought against the surviving brothers and their grantees.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 93; Dec. Dig. § 42.*]

6. ESTOPPEL (§ 49*)—AFTER-ACQUIRED TITLE.

The equitable rule that title acquired by a vendor after his conveyance inures to the benefit of his vendee implies an acquisition of a right which justly, as between the parties, belongs to the vendee, and does not apply to a title held, actually or constructively, by the vendor in trust for a third party; and hence title acquired by vendors at sheriff's sale under a suit fraudulently prosecuted against their deceased brother's minor heir, for whom one of them was guardian, did not pass to their vendee as an after-acquired title.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 119; Dec. Dig. § 49.*]

7. ATTORNEY AND CLIENT (§ 104*)—KNOWLEDGE OF ATTORNEY—IMPUTATION TO CLIENT.

Knowledge of an attorney will be imputed to his client, if it was acquired in a transaction in which the former was acting as the latter's attorney at the time.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 92, 93, 1020; Dec. Dig. § 104.*]

8. EXECUTORS AND ADMINISTRATORS (§ 388*)—ADMINISTRATOR'S SALE—TITLE ACQUIRED.

A purchaser at an administrator's sale acquires only such interest as the estate owned.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

### On Motion for Rehearing.

9. ESTOPPEL (§ 35*)—AFTER-ACQUIRED TITLE.

A purchaser who relies upon estoppel for an after-acquired title can have no greater right than has the grantor against whom the estoppel is claimed.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 84; Dec. Dig. § 35.*]

10. ESTOPPEL (§ 44*)—RIGHT TO ASSERT.

A title by estoppel can be urged only against those who were estopped by the facts relied on, and does not extend to one who is not a privy in blood or estate to the persons against whom an estoppel was originally available.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 111, 113; Dec. Dig. § 44.*]

Appeal from District Court, Taylor County; T. L. Blanton, Judge.

Action by Homer L. Easterwood against J. C. Newton and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Kirby & Davidson and Hardwicke & Hardwicke, all of Abilene, and Theodore Mack, of Ft. Worth, for appellants. Scarborough & Hickman and C. G. Whitten, all of Abilene, for appellee.

HODGES, J. In July, 1888, T. J., H. J., and G. T. Easterwood, three brothers, owned two tracts of land, situated in Taylor county, Tex., of 640 acres each, known as sections 48 and 54. They also owned in common a number of horses, mules, cattle, and farming implements. In July of 1888

they executed a mortgage upon section 54 and 440 acres out of section 48 to secure the payment of their joint note for the sum of $2,375, payable to the Jarvis-Conklin Mortgage Trust Company, due five years after date. In November, 1889, the Easterwoods sold section 54 to S. H. Trees, who assumed and thereafter paid $1,000 of the debt due to the mortgage company, reducing it to $1,375. In November, 1891, G. T. Easterwood died, leaving as his only heirs his wife, Maggie Easterwood, and a son, Homer L. Easterwood. The latter is the appellee in this suit, and was then a small child one year old. G. T. Easterwood's interest in the property above referred to was acquired prior to his marriage, and was his separate estate. His land passed to his minor son incumbered with the life estate of the widow and with the debt previously referred to. On April 6, 1893, T. J. and H. J. Easterwood, joined by Maggie Easterwood, sold section 48 to W. A. Grounds. The deed recited a cash consideration of $5,020, and purported to convey the entire tract, and contained covenants of general warranty. At the time this sale was made, the Easterwoods also executed to Grounds a bond for title. In April, 1891, H. J. Easterwood filed his application therefor and was appointed guardian of the estate of the minor, Homer L. Easterwood. His bond was filed and approved, with T. J. Easterwood and others as sureties thereon, in January, 1893. In February, 1893, the mortgage given by the Easterwoods to the Jarvis-Conklin Mortgage Trust Company was paid off, and a release executed within a short time thereafter. T. J. and H. J. Easterwood about that time moved to the Indian Territory. In 1895 a suit was filed in the district court of Taylor county, in the name of H. J. and T. J. Easterwood, against Maggie Easterwood and the appellee, Homer L. Easterwood; the latter being then about five years of age. This suit was numbered 977 on the docket, and was filed by the attorney for the plaintiffs. The petition recited the existence of the original debt due from the Easterwoods to the Jarvis-Conklin Mortgage Trust Company and the mortgage given to secure its payment, alleged that it had been paid off by the plaintiffs in that suit out of their separate property, and that they were entitled to be subrogated to all of the rights of the mortgage company for one-third of the amount paid by them against the property of their deceased brother, then descended to Homer L. Easterwood and his mother, and asked for a judgment foreclosing that lien. Mrs. Easterwood did not answer in the suit. The court appointed a guardian ad litem to represent the minor, Homer L. Easterwood, and a judgment was rendered foreclosing the lien as prayed for and directing the sale of the property. The sale was thereafter made and the property purchased

---

by A. H. Kirby for H. J. and T. J. Easterwood, to whom the sheriff executed a deed in the ordinary form. The Easterwoods were at the time living in Oklahoma, and do not appear to have been present at the trial. Some time after his purchase, and before the rendition of this judgment, W. A. Grounds died, and one Derstine was appointed the administrator of his estate. The land which the Easterwoods had sold to Grounds was sold by Derstine at an administrator's sale and purchased by J. G. Lowdon. Lowdon conveyed to Hardwicke, through whom those of the appellants claim who here assert title. In September, 1911, Homer L. Easterwood, after securing the removal of his disabilities of minority, filed this suit against J. C. Newton, E. D. Massey, Ada C. Massey, Lucy Newton, G. H. Faulk, Mary Faulk, Ed Caskey, C. C. Caskey, C. R. Elkins, and Maud Elkins, H. J. Easterwood, and the heirs of T. J. Easterwood, then deceased. The purpose of the suit is to recover his undivided one-third interest in section 48 as the property inherited from his father's estate. All of the parties above mentioned, except H. J. Easterwood and the heirs of T. J. Easterwood, were claimants of an interest under the purchase previously made by Grounds.

The first part of the petition is in the ordinary form of an action of trespass to try title. It then recites the plaintiff's chain of title from R. E. Montgomery and wife, which was subsequently agreed upon as the common source. Then follows a narration of the substantial facts previously stated. It is alleged that H. J. Easterwood was appointed guardian of the plaintiff, and that there came into his hands a large amount of property, which the plaintiff inherited from his father's estate, consisting of money, stock, and other personal property, more than was necessary to pay off and discharge the debt due the Jarvis-Conklin Mortgage Trust Company. It is also alleged that this debt was paid in part out of the funds belonging to the plaintiff, and that his land was thereby relieved of the incumbrance; that a suit had been instituted by H. J. and T. J. Easterwood against the plaintiff and his mother for the purpose of foreclosing a lien in favor of H. J. and T. J. Easterwood against the plaintiff's one-third interest in the land in controversy; that there was no basis for the debt or lien set up and relied on in that suit; that the judgment was procured by fraud; that H. J. Easterwood was at the time the plaintiff's guardian, and had in his hands when the aforesaid mortgage was satisfied more than enough funds belonging to the plaintiff's estate to satisfy the incumbrance upon his property. The judgment rendered in that suit is incorporated in the petition. The petition then concludes with a prayer for the title and possession of an undivided one-third interest in the property.

H. J. Easterwood disclaimed any interest in the property, as did also the heirs of T. J. Easterwood.

J. C. Newton, Mary Faulk and husband, Maud Elkins and husband, Charlotte Caskey and husband, Ada Massey and husband, and Lucy Newton answered by general denial and a plea of not guilty. They alleged that they were the heirs at law of K. P. Newton, who had acquired the property by a regular chain of transfers from the common source. They also impleaded the other appellants as warrantors. They further answered, pleading specially the title by which the Easterwoods acquired ownership of the property, and set out the death of G. T. Easterwood, and that he left surviving him his widow, Maggie Easterwood, and the plaintiff in this suit, Homer L. Easterwood. They further alleged the filing of the suit in cause No. 977, and stated the grounds upon which that suit was instituted and the judgment rendered, and that the property was sold and purchased by H. J. and T. J. Easterwood; that upon the acquisition of this title by the Easterwoods it passed by operation of law to the administrator of Grounds' estate, and thence to these defendants in the subsequent conveyances thereafter made. They also pleaded limitation and improvements in good faith.

The plaintiff filed a supplemental petition, pleading his minority as a reply to the defense of limitation.

The case was submitted upon special issues. The jury found that at the time of the death of G. T. Easterwood, the father of the appellee, he and his two brothers owned in common personal property, consisting of horses, mules, cattle, and money, worth in the aggregate $6,850; that all of this property, except $1,800 in money, was in the hands of T. J. and H. J. Easterwood at the time the mortgage debt due the Jarvis-Conklin Mortgage Trust Company was paid; that H. J. and T. J. Easterwood did not account to Homer L. Easterwood for any part of this property; that in paying off the G. T. Easterwood part of the Jarvis-Conklin Mortgage Trust Company mortgage debt the property of Homer L. Easterwood in the hands of H. J. Easterwood, as guardian, was used. The jury also found that T. J. Easterwood did not authorize the bringing of suit No. 977, previously referred to, but failed to agree as to whether or not H. J. Easterwood had authorized the bringing of that suit. By agreement of counsel representing all parties, the court was permitted to determine that issue, and he found that H. J. Easterwood had authorized the institution of that suit. In addition to the findings made by the jury, the court also made special findings, and in connection therewith filed his conclusions of law.

A judgment was rendered in favor of the appellee for the recovery of an undivided one-third interest in section 48, subject to

the life estate of his mother, which the judgment holds passed by her conveyance to Grounds and to his vendees. It denies him any right to the possession of that interest during the lifetime of his mother. It also required him, as a condition precedent, to pay to the defendants who plead improvements in good faith the sum of $650 as the value of the improvements which they had made. All of the defendants in the court below, except H. J. Easterwood and the heirs of T. J. Easterwood, have appealed.

[1, 2] The principal objections urged in this court attack the legal conclusions upon which the judgment of the court below was based. If, under the facts as found by the court and jury, the judgment is clearly right, it should be sustained, regardless of any detailed reason assigned by the judge. When G. T. Easterwood died, his undivided one-third interest in section 48 descended to his son, the appellee in this appeal, burdened with a life interest in favor of the surviving widow. The appellee now owns that interest, and is entitled in this suit to recover it, unless he lost it by the judgment rendered in cause No. 977 and the sheriff's sale made thereunder in 1895. That judgment is, upon its face, regular in all respects material to be here considered, and the sale that followed had the effect of investing the purchasers, H. J. and T. J. Easterwood, with title to all the interest theretofore owned by the appellee, unless the judgment was obtained under conditions, or by means, which render it either void or voidable at the instance of the appellee. If that judgment is not subject to such an attack, the right acquired by H. J. and T. J. Easterwood at the sheriff's sale passed by estoppel, as an after-acquired title, to their vendee, and was thereafter transmitted to those of the appellants who now assert the ownership. Baldwin v. Root, 90 Tex. 550, 40 S. W. 3; Robinson v. Douthit, 64 Tex. 101.

[3] Upon the death of G. T. Easterwood the indebtedness due the mortgage company remained as a claim against his estate, and his property descended to his heirs burdened with that debt and the mortgage given to secure its payment. The jury found, and the findings are sustained by the evidence, that T. J. and H. J. Easterwood had in their hands at the time they paid this debt, personal property belonging to the appellee largely in excess of what was required to pay that portion of this debt which should be charged against his estate.

[4, 5] The jury also found that H. J. Easterwood did, in fact, pay appellee's portion of that debt out of the property held by him as guardian. This finding, however, is challenged as being unsupported by the evidence. The principal testimony bearing upon that issue is that found in the depositions of H. J. Easterwood himself. Referring to this debt, he says: "I know of the payment of said indebtedness. T. J. and George T. Easterwood and myself each paid one-third of the Jarvis-Conklin Mortgage Trust Company mortgage. I applied $900 of the Homer L. Easterwood fund on this mortgage, and myself and Thos. J. Easterwood paid the balance. The Homer L. Easterwood fund was derived from the sale of the personal (property) of his father's estate, who was George T. Easterwood. At the time of his death George T. Easterwood owned one-third interest in section 48, besides some personal property, valued at $900." In another deposition offered by appellants, which was taken a short time after the above answers were made, H. J. Easterwood admitted that the $900 referred to was received from the sale of some cattle which he and his brother got from Grounds when they sold him the land. This indicates that the money actually used in discharging the debt was derived from the sale of the property in which appellee had no interest. This admission is apparently in conflict with Easterwood's former statements, unless it can be inferred that, having mingled his ward's property with his own, or having appropriated it to his own use, H. J. Easterwood at that time elected to treat the proceeds of the sale of those cattle as belonging to his ward in that transaction. He and his brother had the right to do this if they desired. In passing upon the testimony of this witness, the jury had the right to place upon it that construction which would make it consistent, if this could reasonably be done, and to give it such credence as they felt it deserved. When we consider the statements of this witness in the light of his legal duty to pay off any claims against the estate of his ward which he knew to be just, and in connection with the further fact that neither he nor T. J. Easterwood, his brother and bondsman, ever delivered to the appellee, or to his mother for him, any portion of the personal property or money left by appellee's father, the conclusion is materially strengthened. We therefore hold that the finding of the jury that the property of the appellee was used for the purpose of discharging his part of the mortgage debt is sustained by the evidence. That being true, there was no basis in fact for the suit filed by H. J. and T. J. Easterwood against the appellee, and the judgment which they obtained was unjust and unwarranted.

The attorney for the plaintiffs in cause No. 977 thus testifies regarding his connection with that suit and his authority for bringing it: "As stated, I wrote the deed from Easterwoods to Grounds and the bond for title. At the time I was representing Grounds. That was during the lifetime of Grounds. Derstine was appointed administrator, and I was representing him. At the time I wrote the letter dated July 28, 1894, the Easterwoods had spoken to me about bringing suit for them, or rather they had talked to me about bringing the suit. I can't say that they had directed me to bring a

suit, but they had spoken to me about the manner of getting title to this section 48 straightened up. At the time I wrote that letter I was representing Derstine. He was urging Sam Trees to have the title to section 48 perfected. I advised Mr. Derstine as to what his rights were. I knew of the guardianship proceedings in the Homer L. Easterwood case. I knew that Sam Trees was on the bond for title. I was not threatening to sue Trees for the Grounds estate. Mr. Derstine was talking about suing him. I was Derstine's attorney, and I suppose I would have represented him, had he brought suit against Trees. I knew that Homer L. Easterwood was a minor, and that H. J. Easterwood was his guardian, and I advised that suit might be brought as it afterwards was brought. I brought the suit to get the title out of Homer L. Easterwood; advised that procedure. They did not employ me to bring that particular suit, but they employed me to straighten up their title and get the title, so that it would be good in the Grounds estate." From this it appears that the real purpose of that suit was not for contribution on account of having paid off the entire mortgage upon section 48, but to divest the appellee, who was at the time a small child, of the title to his interest in this tract of land, in order to protect the Easterwoods upon their warranty to Grounds. We have, then, this situation: A guardian and his bondsman sue the ward, then a tender infant, upon a fictitious claim, secure a judgment foreclosing a fictitious lien, buy in the property at the sheriff's sale, and take a deed to themselves. It would be difficult to find stronger reasons for impeaching a judgment for fraud and unfairness than are presented by these facts. While H. J. Easterwood testified that he did not authorize the bringing of any such suit, the court found that he did. But the jury found that T. J. Easterwood did not authorize it, so far as he was concerned. But we regard this latter finding as immaterial; for the judgment is entitled to no more sanctity in this suit, if procured with the authority of both of the Easterwoods, than it would be if only one had authorized the suit upon which it is based. The grounds for setting it aside would be sufficient in either event. By the statute the guardian has the right to the possession and control of the ward's property, and it is made his duty to defend all suits against the ward. Article 2703, Rev. St. 1895, authorizes the guardian to pay any claim against the estate of his ward which he knows to be just, without authentication thereof. Article 2721 and other provisions which follow prescribe the manner by which a guardian may collect from the estate of his ward any claim which he holds in his own right. The statute thus makes ample provision for settling, through the probate court, all such claims, and makes unnecessary an independent suit by the guardian for the purpose. The policy of the law is to protect the minor against the very injustice of which the facts here in evidence furnish a glaring instance. We therefore further conclude that the judgment rendered in cause No. 977 in favor of H. J. and T. J. Easterwood against the appellee is subject to the attack made thereon, and should be held for naught. Buchanan v. Bilger, 64 Tex. 589; 1 Black on Judgments, §§ 291, 292.

[6] But appellants contend that they purchased the property without any notice that the appellee was a minor, or that there was any guardianship proceeding pending, or that H. J. Easterwood was the guardian of appellee at the time, or that any fraud was involved in procuring that judgment. They insist that the covenant of warranty contained in the deed to Grounds from the Easterwoods had the legal effect of immediately transferring to the heirs and legal representatives of Grounds the legal title which the Easterwoods acquired under the judgment and sheriff's sale in cause No. 977. The right of the vendee to claim the passage of this after-acquired title depends exclusively upon the existence of the proper equitable ground; for after the alleged purchase for the Easterwoods at the sale made in 1895 they made no conveyance to any one. The disclaimers filed in this suit by H. J. Easterwood and the heirs of T. J. Easterwood remove any evidence of an outstanding title in them originating from that source. The rules which protect an innocent purchaser for value can therefore have no application to the facts of this case. Had the Easterwood brothers, after this sale by the sheriff, conveyed the interest apparently vested in them by the sheriff's deed, a different situation would have been presented; and it may be that some reason would then have existed for entertaining the defense of innocent purchaser. But in this case the appellants must rely solely upon the existence of an equitable estoppel as the basis for claiming the after-acquired title. This rule is founded in part upon the principle that equity treats that as done which should have been done. When a vendor sells land and warrants the title, it would be manifestly unjust to permit him thereafter to hold the property by a subsequently acquired title and defeat his conveyance upon the ground that he had no title to convey. This equitable rule assumes, also, that the vendor has acquired a right which justly, as between the parties, belongs to his vendee; and equity transfers the title accordingly. Equity seeks to do justice. It will not rob one person, however, in order to recompense another. It will not transfer to a defrauded vendee a title held, actually or constructively, by the vendor in trust for a third party. If the sale and purchase by the Easterwood brothers in 1895 was the culmination of fraudulent litigation begun and prosecuted for the purpose of unjustly depriving an

infant ward of the title to his land, they acquired no legal or equitable rights by the purchase at the sheriff's sale. But if it could be said that the Easterwood brothers did acquire by their purchase the legal title, they held it in trust only and for the benefit of the victim of their fraud. Schneider v. Sellers, 98 Tex. 384, 84 S. W. 417.

In the case cited above the court, in discussing facts sufficiently similar to those here involved to make the rule applicable, said: "Having secured the title to the land by fraud, through the judgments entered in the district court of Ellis county, Mrs. Walker held the land charged with a constructive trust in favor of her children. 2 Pomeroy's Equity, par. 1053. Mr. Pomeroy says: 'In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it, in good faith and without notice, acquires a higher right, and takes the property relieved from the trust.'"

[7] At the time of this sheriff's sale Grounds was dead, and his administrator, Derstine, was represented by an attorney, who also appeared as the attorney for the plaintiffs in suit No. 977. It seems that this latter suit was instituted at the suggestion of this attorney. As a part of the evidence offered by appellants, we find the following copy of a letter written by him to H. J. Easterwood on July 28, 1894: "Please write me at once where Homer Easterwood is and also his mother, as it may be important for me to know these facts. Sam Trees has allowed himself to be frightened by Mr. Derstine and it has been impossible for me to keep him straight. The law here specially provides that when a guardian removes from the state, he shall be removed from his guardianship, and I think it would be a good idea to have the court make an order removing you and let some one else be appointed here who could be right here to make all necessary reports. What do you think of this idea? I might get Mr. Kennon to act as he is anxious to get the matter in which Trees is interested settled, but I prefer that you will make some selection and write me at once. We could work the matter another way, which I really think is the best and shortest way out of the whole thing, as I suppose you have taken all the property with you except the land. You and your brother paid out $1,000.00 to the loan company to release the land from the mortgage, and of course you are entitled to have that or rather one-third of that paid back to you as well as one-third of the interest you have paid since your brother's death. You might let us file a suit in the district court here against your sister-in-law and the boy in favor of Mr. T. J. Easterwood to foreclose the deed of trust, setting up the fact that he had paid it off, and when the court forecloses the deed of trust, the land can be sold and bought in by one or the other of you and then you can make a deed without applying to the probate court. If the order is made removing you, we can have another guardian appointed and go right ahead with the matter and we trust you will write at once and suggest some one to act as guardian who can give the bond. Please write at once and answer the inclosed questions fully so that I may know what to do, as court meets on the 6th of August." In another letter, written to S. H. Trees September 24, 1894, he says: "S. H. Trees, Esq., Cedar Hill, Texas. I am just in receipt of your letter. I have heard from the Easterwoods, and they have arranged the matter in part so that I will get it shaped up at next term of district court without suing you. I will watch out for your interests and see that no advantage. is taken of you." With reference to this correspondence and his connection with that suit, the attorney thus testifies: "He is the Trees that was on the bond for title. I was representing the Grounds estate at that time. That was after the deed to Grounds by the Easterwoods, but before suit was brought in cause number 977. I was Grounds" attorney to straighten up this title, and I had been Grounds' attorney before that time. I wrote the deed from Henry J. Easterwood and Thomas J. Easterwood and Maggie Easterwood to Grounds; also the bond for title from the Easterwoods to Grounds and the transfer of the Presser contract for these cattle from Grounds to the Easterwoods. I knew at that time of the guardianship proceedings. My information was that Homer Easterwood was a minor. I had never seen him; but both the Easterwoods told me he was a minor, and I knew it, of course." From this testimony it clearly appears that the attorney employed by the Grounds estate not only knew of appellee's minority and of the pendency of the guardianship at the time this suit No. 977 was filed, but suggested that suit as a means by which the minor might be divested of his title, for the purpose of protecting the Easterwoods upon their warranty, and to perfect the title of his client. The knowledge and purpose of the attorney in this transaction will be imputed to the client in whose interest he was acting at the time, the administrator of

the Grounds estate. It follows, therefore, that neither Grounds' administrator nor the heirs of Grounds have any equitable basis for claiming a title by estoppel, based upon an alleged after-acquired title by the Easterwoods, inasmuch as they had notice of the fraud.

[8] Section 48, the land claimed by Grounds, was subsequently sold by Derstine, the administrator, at an administrator's sale, and was purchased by Lowdon, under whom the appellants now claim. Lowdon purchased such interest only as the estate of Grounds owned at that time. The administrator could not sell him what the estate did not own, even though he attempted to do so. The appellants thereafter acquired only such interest as Lowdon purchased from the administrator.

The judgment of the district court will be affirmed.

### On Motion for Rehearing.

[9, 10] Counsel for appellant contend that in Baldwin v. Root, cited in the original opinion, the Supreme Court has explicitly decided that an after-acquired title passes eo instanti to the grantee as effectually as if a conveyance to that effect were made and delivered. From this it is argued that, when T. J. and H. J. Easterwood purchased the interest of the appellee at the sheriff's sale made under the judgment rendered in cause No. 977, they acquired the full legal title to all the interest owned by him in the land in controversy; and that the title so acquired immediately passed by operation of law to their vendee. We do not concur in that conclusion. Had T. J. and H. J. Easterwood, after their purchase at the sheriff's sale, made a conveyance to their former vendee, then such vendee and those claiming under him would hold by deed, and not by estoppel; and their rights would be determined by the principles of law which govern purchasers holding under such deeds. While there may be no difference between the legal effect of a title conveyed by deed and one acquired by estoppel, it does not follow that an estoppel will operate to transfer a title under all the conditions, where a right might be acquired by a deed. A deed will sometimes defeat an undisclosed equitable title, as when one holding property in his own name for the benefit of another conveys it to an innocent third party for value. In such an instance the real owner loses his right by force of the deed, not because the grantor properly and legally exercised a power to convey, but because the vendee purchased without notice. Manifestly, in such an instance, a fraud would be perpetrated—something the law would never do, when left to its own operation. In Schneider v. Sellers, supra, the ultimate purchaser, a corporation, was protected, upon the ground that it had taken a deed and paid value without notice of the previous fraud perpetrated by Mrs. Walker and her husband in procuring the judgment divesting the rightful owners of their interest in the property. In filling gaps in the chain of title the law, when left to its own operation, supplies the missing link only where the parties themselves should execute the proper and necessary conveyances, and have failed to do so. Kelley v. Jenness, 50 Me. 455, 79 Am. Dec. 623; Clark v. Baker, 14 Cal. 612, 76 Am. Dec. 449; 3 Wash. on Real Prop. (3d Ed.) 111. One who relies upon estoppel for an after-acquired title can have no greater right than has the grantor against whom the estoppel is claimed. Fretelliere v. Hindes, 57 Tex. 392. Again, a title of estoppel can be urged only against those who are estopped by the facts relied on. In this instance, if the rule is applicable, the estoppel is available only against T. J. and H. J. Easterwood and their privies in blood or estate. The appellee belongs to neither of those classes. He does not claim through them by descent; neither does he claim from them by deed. On the contrary, he claims in opposition to them. Hence he is not estopped to assert his title.

The motion is overruled.