———— o o o ————

## CORIELL *v.* HAM.

A sheriff sold several lots, on execution, to C., the brother and agent of the execution defendant, who failed to pay the purchase money; the sheriff thereupon " proclaimed the postponement of the sale " from the 17th to the 24th of August, at which time the property was sold to H.; held, that as the adjournment was proclaimed by the sheriff, as the defendant's agent was present and had notice of the adjournment, and as it was occasioned by him, the sale was not void in consequence of such postponement; held, also, that although H. was present at the first sale, and had notice of the adjournment, it does not follow that he could be charged with notice of irregularities.

The execution law in force at the time of a contract, enters into and becomes a part of that contract, so far as its obligations and liabilities are concerned; but such portions of an execution law, as are merely remedial, do not affect such obligations, and may be changed or modified by subsequent legislation.

The substantial rights of parties, under a contract, cannot be changed or impaired by subsequent laws; but the method of enforcing those rights may be changed.

Where the judgment was rendered in 1842, and the execution issued and the sale took place in 1844; held, that the sheriff's deed delivered to the purchaser on the day of sale, did not invalidate the sale, nor impair the execution defendant's right to redeem the land under the law of the contract.

It is the policy of the law to protect judicial sales,

*Appeal from Dubuque District Court.*

*Opinion by* GREENE, J. The petition in this case, was filed by Charlotte Coriell, and W. W. Coriell, against Matthias Ham, and prays that the execution sale be set aside and the sheriff's deed to certain lots in the city of Dubuque be cancelled. It appears that November 16, 1842, J. V. Berry obtained judgment against W. W. Coriell; that execution was issued June 27, 1844, and the lots in question were levied upon, and advertised to be sold on the 17th of August following; that the lots were bid off by John C. Coriell, the brother and agent of defendant, who failed to pay the amount of his bid, and in consequence, the sale was postponed until the 24th of that month, when M. Ham, became the purchaser.

The case as submitted to the court below, was decided against the plaintiffs, and their petition was dismissed. To this decision, several objections are urged by counsel for appellants.

1. It is objected that the sheriff was not authorized to make the sale on the 24th of August, as he had previously advertised the sale for the 17th of that month. It appears by the deposition of the sheriff, that he " proclaimed the postponement of the sale." The sale then was *postponed* from the 17th to the 24th of the month. As the adjournment was proclaimed by the sheriff, and as the execution defendant's agent was present, and had notice of it ; and as the postponement was occasioned by his failure to pay the amount he had bid upon the property, he should not after so long an interval, be permitted to take advantage of that derangement in the sale. If there had been no postponement of the sale, and if the delay had not been occasioned by the agent of the execution defendant, we should regard this irregularity as having a more serious effect upon the validity of the sale. There is great propriety and frequently obvious necessity for adjourning such sales from time to

time; and when it is done by public proclamation and with notice to the parties in interest, as in this case, it should not have the effect to invalidate the sale.

In *Burd* v. *Dansdale*, 2 Binn., 80, it was held, that a sheriff's sale of lands, even after the return day of the writ of *venditioni exponas*, is not void, if advertised before, and continued by adjournment. So in *Luther* v. *McMichael,* 6 Humph., 298.

The case of *Givan* v. *Doe*, 5 Blackf., 260, is referred to by appellant, with great confidence. In some particulars, that case resembles this, but in others it is vastly different. In that case, a sheriff sold the land to B. who failed to pay the purchase money. Three days after, *at the request of C.*, and *without having adjourned the sale*, and without advertising it again, the sheriff re-exposed the property to sale, and sold it to C. *who had notice of the fact, and was a party to the irregularities*; and it was held that there were in the *circumstances of the case, those ingredients of fraud which vitiate the sale.* We have *italicised* the facts, and peculiar features of that case, which show it to be materially different from this. In this case there was an adjournment. The sale was not at the request of the purchaser, and he was in no way a party to the irregularities. Nor were there in this case, any ingredients of fraud which could invalidate the sale.

2. It is not pretended that there was fraud or collusion on the part of the purchaser, but it is objected to the decision below, that he had notice of the irregularities. Indeed, the plaintiffs show so much confidence in Ham, that they made him their witness, and it seems by his testimony, that he was present at the first sale, and from that circumstance, it is claimed that he had notice of the irregularity. By this same testimony, it seems that Ham had given Coriell " six years to redeem in, and had requested him to redeem at ten per cent. interest on the money he had paid out; that Coriell had refused to do so, saying

*30

that he could do better with his money." This testimony shows that Ham attended the first sale, and had notice of the adjourned sale, but it shows the very reverse of fraud or collusion. It shows that Ham's purchase was in good faith, and in full confidence of regularity. From the mere fact that he was present at the first sale, and had notice of the adjourned sale, it does not follow that he is to be charged with notice of irregularities which were not known to him, and which are not even now made patent.

3. It is objected that the deed was prematurely given; that the judgment was rendered November 18th, 1842, when the act of February 17th, 1842, subjecting real and personal estate to execution, was in force; that the execution law enters into and becomes a part of the contract; that under that act, the sheriff was only authorized to give a certificate to the purchaser, which would entitle him to a deed in fifteen months if the property was not redeemed; and that as this deed was given immediately after the sale under the law in force, at the date of the sale it was unauthorized and void.

We think this objection is without sufficient foundation. Although appellants are correct in assuming that the execution law in force at the time of the contract, enters into and becomes a part of it, still it must be borne in mind that that doctrine is only applicable to such portions of the execution law as affect the obligation of contracts. So far as execution laws are merely remedial, they may be modified and changed at any time. The method of enforcing a liability may be changed, but the liability itself cannot be impaired. If the law of a contract requires payment in cash, a subsequent law cannot constitutionally direct that payment may be made in property at two-thirds valuation. If the law of the contract stipulates that payment may be enforced by a sale of property within a given time after judgment, a subsequent law cannot change that contract by extending the time; but the new law may change the

Coriell *v.* Ham.

manner in which such obligations and liabilities are to be enforced.

The substantial rights of parties under a contract, cannot be changed or impaired by subsequent laws, but the remedial directions to the officers of the law for enforcing those rights may be changed.

The execution law of February 17, 1842, was repealed February 16, 1843, and the valuation law of 1843, adopted. So far as the provisions of that valuation law were remedial, and so far as they did not impair the obligation of contracts, they were applicable to the execution under which the property in question was sold. Accordingly, the sheriff had power to deliver the deed to the purchaser as soon as the purchase money was paid. We can discover nothing in the sale or in the deed that impaired the rights of either party under the contract and judgment. The valuation and unconstitutional portion of the act of 1843, was not followed in this sale. Indeed, the whole proceeding under the execution appears to have been in substantial harmony with the execution law of the contract, until the deed was delivered to the purchaser, and in that the sheriff acted under the law in force at the date of the deed.

It is alleged that the execution defendant had, under the law of the contract, a right to redeem the property. That right is not changed by the sheriff's deed to the purchaser. The defendant could have redeemed the property from the deed, just as effectually as from a certificate. If this had been done, the deed could have been cancelled, or the purchaser would have redeeded the property. It appears by appellants' own evidence, that the appellee offered to let appellants redeem, for a period of six years after the sale, without requiring more than ten per cent. interest; but they considered the money worth more to them than the property. Hence, he cannot now be justified in saying that he was wronged or defrauded by the sheriff's sale. So long as the property did not appreciate in value equal to ten per cent., the appellants acquiesced in the purchase; but after a great

Coriell *v.* Ham.

advance in its value—after a lapse of eight years—the bait becomes too tempting to resist, and all at once, irregularities are discovered in the sale that were never thought of before. We think, under the circumstances and equities of this case, the appellants are barred by lapse of time; by their own deliberate laches; by having waived their legal rights to redeem, and by refusing appellee's generous offer to have them redeem. That lapse of time will cure more serious irregularities than those disclosed in this sale, is shown by 4 Blackf., 266; 2 Douglas, 150.[a]

It is generally conceded by the authorities that a *bona fide* purchaser at sheriff's sale, even if that purchaser be the execution plaintiff, is not affected by any irregularity or omission of the sheriff in advertising and conducting the sale. Such purchaser is protected by the presumption that the judgment of a competent court has been correctly rendered, and that the execution in the hands of the sheriff was regularly issued, and that he performed his duty according to law. In the several cases we have had before us, involving the validity of execution sales, under various objections, the authorities cited from other states have perhaps been sufficiently considered, without again referring to them. *Humphrey* v. *Beeson*, 1 G. Greene, 199; *Hopping* v. *Burnam*, 2 ib., 39; *Corill* v. *Doolittle*, ib., 385; *Johnson* v. *Carson*, 3 ib., 499; *Sprott* v. *Reed*, ib., 489.

In the absence of fraud, it is the obvious policy of the law to protect judicial sales.

Judgment affirmed.

*Smith, McKinlay* and *Poor*, for appellants.

*H. A. Wiltse* and *J. Burt*, for appellee.

(a)  *Ante* 75.