OLIVE COPPER, Plaintiff and Appellee, v. THE IOWA TRUST & SAVINGS BANK, Defendant and Appellee, ELIZABETH HAUGE, Defendant and Appellant, and HARVEY WILLIAMSON, Defendant and Appellee.

Resulting trusts: PRESUMPTION. Where the land acquired by a wife by descent has been sold and the proceeds used in purchasing other land, title to which was taken in the name of the husband, a presumption of a resulting trust in favor of the wife arises.

**Same:** EVIDENCE. In determining whether a husband, as in this case, holds the legal title to land in trust for his wife the court will scrutinize the evidence of the husband and wife closely with a view to thwarting collusion between them as against an execution creditor of the husband. In this action the evidence is held to show as between the husband and wife that the husband held the legal title to the land in question for the benefit of the wife, the same having been purchased with the proceeds of land which descended to her.

**Executions:** SALE OF LANDS *en masse.* The statute relating to the sale of lands on execution either separately or *en masse* will not be too narrowly construed; and while a sale *en masse* of lands which could have been advantageously sold separately 'can be set aside, still where the same can not be sold in separate tracts for want of bidders, it is proper to sell the same as a whole.

**Same:** FRAUD: INADEQUACY IN PRICE. Mere inadequacy in price is not usually sufficient in itself to avoid an execution sale, but when taken in connection with other irregularities may tend to establish either actual or constructive fraud; and where other circumstances are shown which excuse a failure to redeem, gross inadequacy in price may be sufficient to establish an inference of fraud.

**Execution sales:** WHEN VOIDABLE. Where, as in this case, the execution sale was made without publication of notice, no bidders appeared except a representative of the execution plaintiff, the sheriff failed to exercise his right to postpone the sale and the owner was excusably ignorant of the sale and of the debt for which the sale was made until after execution and delivery of the sheriff's deed, the price was grossly inadequate, and the sheriff's return on execution was withheld for some time, and the equitable owner offered to do equity by paying the amount of the sale with interest and costs, the sale and deed were properly set aside.

**Same:** POSTPONEMENT OF SALE. A sheriff must exercise his right to postpone a sale on execution with impartiality toward all parties interested, and a failure to do so may be ground for setting the sale aside.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, *Judge.*

THURSDAY, NOVEMBER 17, 1910.

SUIT in equity to set aside a sheriff's sale and deed.

There was a decree for plaintiff. The defendant Elizabeth Hauge has appealed.—*Affirmed.*

*Dudley & Coffin* and *Ole O. Roe,* for appellant.

*Thomas J. Guthrie,* for appellee Williamson.

*Read & Read,* for appellee Copper.

*Stewart & Hextell,* for appellee Iowa Trust & Savings Bank.

EVANS, J.—The plaintiff is the wife of C. J. Copper, who held the legal title to a farm of one hundred and forty acres situated in Polk County. In 1907 the Iowa Trust & Savings Bank obtained a judgment against Copper for $68 on a promissory note. In January, 1908, execution issued under such judgment, and was levied upon the farm in question. On February 17, 1908, the farm was sold at execution sale *en masse* to the execution plaintiff for $102.60, being the amount of the judgment and costs. The farm in question was incumbered by a mortgage for $3,500, with some accrued interest, and past-due taxes, and its fair market value was somewhere between $8,500 and $12,600. No redemption having been made from the execution sale, a sheriff's deed was issued at the expiration of the year to the defendant Elizabeth Hauge as assignee of the execution plaintiff. The defendant Elizabeth Hauge is the wife of A. O. Hauge, the cashier of the Iowa Trust & Savings Bank, and the person who bid in the property for the execution plaintiff. The plaintiff claims to be the equitable owner of the farm in question, and claims that her husband held only the legal title in resulting trust for her. She alleged in her petition that she knew nothing of the sheriff's sale until shortly after the issuance of the sheriff's deed, and that she knew

nothing until then of any judgment or indebtedness owing by her husband to the execution plaintiff. She asked that the sheriff's sale be set aside on various grounds, which will be hereinafter noticed. She offered to do full equity and offered to pay the amount of the bid at sheriff's sale with all interest and costs and other disbursements. The defendant Hauge answered, denying, generally, any equity in favor of the plaintiff, and she stands here upon her statutory rights under the sheriff's deed, and claims title thereunder. The trial court found that the plaintiff was the equitable owner of the premises, and that her husband held only the legal title in resulting trust for her. We feel constrained to sustain this finding upon the record before us.

The plaintiff and her husband were married in 1884, at which time neither of them had any property. Two years later the plaintiff acquired the title to sixty acres of land as one of the beneficiaries of her deceased father's estate. About 1894 this land was sold, and the land now in question was purchased with the proceeds thereof; the title being taken in the name of the husband as already indicated. To this extent the testimony is undisputed and conclusive. That the presumption of resulting trust arose in plaintiff's favor from such a state of facts is well settled by authorities. *Cotton v. Wood*, 25 Iowa, 43; *Lindley v. Martindale*, 78 Iowa, 379; *Seeberger v. Campbell*, 88 Iowa, 63; *Culp v. Price*, 107 Iowa, 133; *Smith v. Smith*, 132 Iowa, 700.

*1. RESULTING TRUSTS: presumption.*

The defendant contends that the evidence in this case overcomes such presumption, and shows a gift of the land by the wife to the husband. There is no direct evidence to that effect. In order to find such gift as proved, we should have to do so by a mere inference from the fact that no well-defined purpose or reason is shown for the taking of the title in the name of the husband. We do not overlook the fact that a claim

*2. SAME: evidence.*

of this kind might easily be established as against an execution creditor by the collusion and concurrent testimony of both husband and wife. For that reason, the testimony should be scrutinized with great care for the purpose of thwarting mere collusion. We have scrutinized the evidence in this case with such point in view and are satisfied that the claim of the plaintiff is in no sense an after-thought, nor does it rest upon the mere collusion of the parties notwithstanding that they both concur in their testimony. The past conduct of the parties has been entirely consistent with the present claim. In July, 1907, the plaintiff brought an action of divorce against her husband. She alleged in her petition at the time that the land in question was her property, and that her husband held the legal title only in a resulting trust for her. This claim on her part was never denied by her husband either by word or conduct. Later the parties were reconciled and the divorce proceedings were dropped.

Knowledge of the sheriff's deed came to the plaintiff, within a few days after its issue, not through her husband, but through one Venneman and one Mathis. She immediately called upon the defendant's husband, A. O. Hauge, and asserted her right to the land, and offered to hold the purchaser harmless by restoring to her the full amount of the purchase with interest, costs, and $100 permium. It is manifest, therefore, that there was no occasion for any collusion between herself and her husband at any time prior to the expiration of day of redemption. On the whole record, we are quite ready to agree with the trial court that, as between the plaintiff and her husband, he held the legal title in trust for her as the equitable owner. And this fact will be assumed in the further discussion of the case.

Of the effect this finding might have had upon the right of the execution plaintiff to levy upon this land at all is a question which we will have no occasion to

consider. The plaintiff has eliminated such question entirely by offering at all stages of the proceedings to do the utmost equity toward the defendant and to fully reimburse her. The trial court took her at her word, and incorporated in the decree entered below the requirement that she comply with such offer. It appears, also, that she has paid into the court for the benefit of the defendant the full amount required under such provisions of the decree. She has recognized in advance the equitable right of the execution plaintiff to show that it relied upon the apparent title of her husband to the land in extending credit to him, and to be protected against hidden equities in favor of the wife. The defendant, therefore, has set up no claim to be an innocent purchaser without notice. And there is no issue in the pleadings on that question, although it has been somewhat argued. Plaintiff attacks the sheriff's sale on the ground that the property sold included the homestead, and on the further ground that there were various irregularities in the conduct of the sale such as to amount to a legal fraud upon her. She contends that the case in its facts is one of equitable cognizance and that she is entitled to equitable relief.

The plaintiff and her husband moved upon the farm with their family about the year 1894, and occupied the same as their homestead until the year 1899, at which time they moved to Des Moines, where they have lived ever since without acquiring any other homestead. The children have attended school there. The wife has suffered much from ill health. The husband has become engaged in the saloon business, and it seems to be conceded by both sides that he has formed a habit of unduly patronizing his own bar. Both husband and wife contend that they left the homestead temporarily only, intending to return thereto, and that they have never abandoned such intention. The farm was rented from year to year, and there is much in their conduct that is consistent with

their claim.    The most prominent inconsistency consists in the fact that the husband has always voted in Des Moines. In obtaining employment the husband first became a bar-keeper.    Then he became surety for his employer for $600. Then the employer failed, and the husband purchased the saloon.    The $68 was the remnant of the suretyship.    This claim was reduced to judgment in justice court, and a transcript filed in the district court on February 8, 1907.    On January 4, 1908, the execution plaintiff placed an execution in the hands of the sheriff with written instructions to levy the same upon the one hundred and forty acres in question, "and sell same."    A formal levy of the execution appears to have been made on the same day and again on January 13th.    The, day of the execution sale was fixed as February 17, 1908.    The notice was served on the execution defendant on January 27th.    The provision of section 4024, Code, requiring two publications of the notice of sale, were not complied with, and no publication whatever was made, although the sheriff's return on the execution falsely stated that such publication was made in the paper, Plain Talk.    No bidders appeared at the sale except the cashier of the execution plaintiff, the husband of the defendant, Elizabeth Hauge.    The return on the execution states that the sheriff "did then and there offer to sell any part of the above described property, and, having received no bids therefor, he offered it altogether."    This is the only recital in the return as to the method of offering the property.    This return is contradicted somewhat by the testimony of the cashier.

Disregarding the homestead question for the moment, it is the contention of the plaintiff that the sheriff's sale was voidable, if not void, (1) because the levy was excessive and in violation of section 3970 of the Code; (2) because the sale was *en masse* and in violation of the same section; (3) because the consideration was grossly inadequate and unconscionable; (4) because there was no pub-

lication of the notice of sale, and because this omission tended to prevent notice to the plaintiff and to prevent the attendance of bidders.

Section 3970 requires that the sheriff "shall in all cases select such property in such quantities as will be likely to bring the exact amount required to be raised as nearly as practicable." It has been often held by this court that a sale *en masse* of tracts of land which could have advantageously been sold separate may be set aside either by motion or by proceeding in equity. *Boyd v. Ellis,* 11 Iowa, 97; *White v. Watts,* 18 Iowa, 74; *Bradfield v. Limpus,* 13 Iowa, 424; *Lay v. Gibbons,* 14 Iowa, 377 (81 Am. Dec. 487). But, if lands can not be sold in separate tracts for want of bidders, it is proper to sell *en masse.* *Conn. Mutual v. Brown,* 81 Iowa, 42. It is manifest that section 3970 should not be construed too narrowly as applied to the case of incumbered real estate. The same may be said as to a sale *en masse.*

3. EXECUTIONS: sale of lands en masse.

It has also been held that mere inadequacy of consideration is not sufficient of itself to render a sale voidable. *Bowden v. Hadley,* 138 Iowa, 711; *State Savings Bank v. Shinn,* 130 Iowa, 365. It is to be noted, also, that section 4027 subjects the officer to penalty and damages for failure to publish the required notice, but it provides also that the "validity of the sale is not thereby affected." The fact that the execution defendant has a large protection in his right of redemption for the period of one year from an execution sale of real estate usually furnishes the strong reason why such sale should not be set aside for a mere irregularity, which does not affect his substantial right.

4. SAME: fraud: inadequacy in price.

As against this, we have held that gross inadequacy of consideration is nevertheless a very important fact in connection with other circumstances as tending to establish fraud either actual or constructive. Where other circum-

stances are shown which excuse the plaintiff's failure to redeem, gross inadequacy of consideration may be sufficient to establish an inference of fraud. *Lehmer v. Loomis,* 83 Iowa, 420; *Fortin v. Sedgwick,* 133 Iowa, 233; *Cook v. Jenkins,* 30 Iowa, 452. In *Bowden v. Hadley* it was shown that the plaintiff had knowledge of the sale, and refused to redeem, and relief was denied him. It was said in the opinion that, in order to justify equitable interference in such a case, "there must be equity in the entire claim." This latter remark, quoted from the opinion, is an apt condensation of the rule at this point.

In the case at bar there can be no doubt under the evidence that the plaintiff was wholly ignorant of the sheriff's sale and of the debt upon which it was founded.

5. EXECUTION SALES: when voidable.

In this respect it is like the *Fortin* case, *supra.* Such ignorance arose out of no fault on her own part. The failure to publish notice as required by section 4024 tended to prevent her from gaining the knowledge which might otherwise have come to her. It tended also to prevent the attendance of bidders. We have, therefore, something more than a mere inadequacy of consideration, and something more than the mere failure to publish the notice, and something more than a mere sale *en masse.* We have all these irregularities cooperating towards an unconscionable result as against the plaintiff, who was innocently ignorant of the proceedings which menaced her equitable right to the property. If she had actually known of the proceedings in advance of the issue of the sheriff's deed, a different question might be presented.

Let it be noted, also, in this connection that section 4029 provides "when there are no bidders, or when the

6. SAME: postponement of sale.

amount offered is grossly inadequate," the sheriff may postpone the sale. It has been held that the discretion herein vested in the sheriff should be availed of with a fair and impartial atten-

tion to the interest of all parties concerned.    And a failure to so avail may be ground for setting the sale aside.    *Swertzell v. Martin,* 16 Iowa, 519.    In *State Bank v. Shinn,* 130 Iowa, 365, it was held under the facts of that case that the sheriff was not "bound to adjourn where all the proceedings of the sale are in strict conformity to the law." In view of the marked irregularities in the proceedings shown in this case, this section of the statute called loudly upon the sheriff, and his failure to use his discretion in favor of an adjournment tended also to promote the inequitable result.    As tending still farther to prevent the acquisition of knowledge by the plaintiff, the sheriff withheld the execution and his return thereon until November, 1908, a period of eight months beyond the time allowed by statute. It is our conclusion that the plaintiff presents a proper case for equitable relief.    That being so, there is no room for argument as to what such relief must be.    As already indicated, the decree entered below provided for full reimbursement to the execution plaintiff and its assignee, the defendant Hauge, with interest.    This is full equity to the defendant.    In view of our conclusion at this point, we have no occasion to consider the question of homestead. The decree entered below will be *affirmed.*