JENNIE WRIGHT et al., Appellees, v. LESTER WRIGHT et al., Appellants.

DEEDS: Deed to Wife with Consideration Paid by Husband—Presumption. A deed made to a wife at the instance of her husband, who furnished the consideration, creates a presumption of *gift* to the wife; and such presumption, after the death of the parties, can be overthrown only by evidence which is clear, satisfactory, and convincing. Evidence reviewed, and held insufficient.

WILLS: Devise (?) or Dower (?)—Election. A husband who was devisee under his wife's will, and who, as executor, claimed to take under the will, and never claimed to take dower interest, will be held to have elected to take under the will.

*Appeal from Lucas District Court.*—F. M. HUNTER, Judge.

OCTOBER 2, 1920.

ACTION for partition of certain property in Iowa and lands in Colorado and Nebraska. There was a decree for plaintiffs, finding that some of them were the owners of certain portions of the property in controversy, and ordering partition of the remainder. The defendants appeal.— *Reversed.*

*Hickman & Wells* and *E. A. Anderson,* for appellants.

*J. A. Penick, C. W. Stuart, Wm. Collinson,* and *J. W. Purinton,* for appellees.

PRESTON, J.—The real contest is over the ownership of the property. The legal title to the property was in Mary J. Wright, at the time of her death, March 16, 1910, except

1. DEEDS:
deed to wife
with consideration paid by
husband :
presumption.

that some of the property had been conveyed by George B. after her death, and, as defendants allege, reinvested in other lands, some of which was thereafter conveyed without consideration, to others who are parties to this suit. The issues, which we cull from the pleadings contained in 43 pages of the abstract, stated as briefly as may be, are that the plaintiffs at first alleged that plaintiff Jennie Wright, the second wife, and the surviving spouse of George B. Wright, deceased, was the owner of a one-ninth share, the other appellees of two ninths, and the appellants of six ninths of the real estate in controversy; that the real estate involved was what remained, undisposed of, of the real property of which Mary J. Wright, the deceased first wife of George B., died seized, and in which George B. had, at the time of his death, a distributive share of one third. Defendants denied that appellees had any interest in the real estate; denied that George B. had a one-third share; but alleged that he, in his lifetime, elected to take a life estate, under the will of his deceased wife, Mary J., in lieu of a distributive share. Defendants also pleaded former adjudication, for that the said George B., in an application

by him to construe the will of his deceased wife, was adjudged to have only a life estate in the property, and that such decree and finding of the court was not appealed from; also estoppel and laches; and, by cross-petition, asked partition of the real estate of which Mary J. died seized, including the real estate described in the petition, among themselves, as heirs of Frank P. Wright, deceased, the nephew of George B., who lived with and worked for George B. and Mary J. from the time he was 15 years of age until he was married, at 30, and who was the devisee of the property, under the will of Mary J. Mary J. and George B. had no children, and no direct heirs. Frank was treated as a son. In the view we take of the case, it will not be necessary to determine all of the foregoing issues presented.

Before the trial, plaintiffs filed their amended petition, in which they claimed absolute ownership of all the real estate, under an express oral agreement between Mary J. and George B. that she should hold the legal title of said property in trust for him until his death, when it was to vest in her. Plaintiffs further alleged that Mary J. had no money or property of her own, and that her husband, George B., purchased the real estate in controversy, from time to time, and paid the purchase price therefor himself, and had the title of the same conveyed to Mary J., his wife, under the express oral agreement before stated. Though plaintiffs allege that there was an express oral agreement, they do not claim to have any written evidence thereof, and do not now claim an express trust. They rely on the claim that there was a resulting trust.

Ida M. Purinton and Edith Buckalew, the nieces of George B. and Mary J. Wright to whom George B., in 1917, conveyed 160 acres of land in Colorado, intervened, claiming to be owners of that land. They alleged that such land was purchased by George B. in 1913, and paid for in part by the conveyance of certain town lots, standing in the name of Mary J. Wright. It was conceded that there was no consideration for these conveyances; and one of the interveners testified that she was surprised when she was notified that

George B. had made the conveyance to her. Plaintiff Jennie Wright, the surviving spouse of George B., claims to own some of the property situated in Nebraska, under a deed from her husband to her, executed after the death of his first wife, and on April 29, 1913. This was about a month after he married Jennie, which marriage was on March 26, 1913. It appears that this land was purchased with proceeds of property, real and personal, which had before stood in the name of the first wife, Mary J. The stallions, jacks, and other personal property were assessed a part of the time to him, and a part of the time to her. There seems to have been no consideration for this deed, and the testimony shows that, when George B. passed the deed to his wife, he made the remark that it was a good present for her. Defendants deny that George B. bought the Colorado land with his own money, and allege that interveners acquired the title with full knowledge of the facts, and without paying any consideration.

The will of Mary J. Wright, executed August 18, 1892, and probated August 23, 1910, omitting formal parts, provides:

"First. I will and bequeath to my beloved husband, George B. Wright, the use and control of all my estate both real and personal of whatsoever kind or character it may consist of at my death, for his use and benefit during his natural lifetime with full power and authority to sell and convey any and all real estate I may die seized of and to reinvest the proceeds as he may think best and for the best interest of my estate.

"Second. At the death of my beloved husband, George B. Wright, I will and direct that whatever part or parcel of my estate, if any, then remaining unexpended, both real or personal, shall go to our nephew, Frank P. Wright, son of S. J. Wright, deceased."

It appointed George B. Wright executor, and he qualified and acted as such. In August, 1910, George B. Wright asked the court to construe said will to mean that he is vested with the absolute title to all the property belonging

to said Mary J. Wright. Notice of such application was served on the defendants herein: and, in November, 1910, the court, Judge Vermilion presiding, made an order construing the will to mean that, by the first paragraph, George B. was given the use and control of the entire estate during his natural life, with power to sell and convey the real estate belonging to the estate, and reinvest the proceeds as he might deem for the best interest of the estate, and that the remainder of said estate, at his death, be disposed of as in said will directed; that George B. was given a life estate in the entire property, with power to sell and convey, and to invest the proceeds for the benefit of the estate, with a remainder at his death to the heirs of Frank P. Wright. This order was not appealed from. As stated, some of the properties were sold by him thereafter, and the proceeds reinvested, and the title changed, as stated. On December 7, 1916, George B. Wright executed his will, which, omitting formal parts, follows:

"Second. I will and bequeath to my wife, Jennie Wright, the one third of my estate both real and personal.

"Third. I will and bequeath all the remainder of my estate, both real and personal, and share and share alike, to my following named nephews and nieces: Della. M. McDonald, Georgiana McMains, Ida Histed, Maggie Brown, both residing at Buffalo, New York; George B. Huyck, William Huyck, William Wright, Austin Wright, Mary Funk, Ollie Wright, W. P. Beem, Frank Beem, Frank Coles and Lulu Coles."

The trial court found that the different properties were purchased by George B., and the title taken in his wife in trust; that he did not intend to convey to her any present beneficial interest; that interveners are the owners of the Colorado land; that Jennie Wright is the owner of the Nebraska property; and that plaintiffs are entitled to partition of the remaining real estate, describing it. George B. died on May 8, 1917.

Mary J. and George B. were married in 1863. They were living on a rented farm, until they bought a farm, in

1873. It is claimed that, some time between 1863 and 1873, when the first property was purchased, he inherited some $1,100 or $1,200 from his father. The trial court so found, and that the proceeds thereof went into the land first purchased. Appellants challenge the sufficiency of the evidence to sustain such a finding. One of the witnesses says that George B. at one time boastfully said he had inherited $800 from his father. But, conceding that he inherited the amount first stated, there is no direct evidence that this was invested in the land. Plaintiffs seek to draw the inference that he did so, from the fact that, as they say, Mary J. had no property and no separate occupation; but the evidence shows that George B. was sickly all his life, and further shows that Mary J. was an industrious and hard-working woman; that she sold butter, eggs, chickens, etc.; and that, at one time, she had a one-fourth interest in a small house and lot, of the total value of about $600 or $700. One of plaintiffs' witnesses testifies that George B. bought the interest of the other three heirs. It is strongly urged by appellees that this was, in fact, her property, and that this small amount of property is the property referred to in her will; though she does not, in the will, specifically describe or devise any particular property. But George B. appears to have managed and treated this the same as he did all the property standing in her name. The first property purchased was bought on September 10, 1873, and was a farm of 83 acres, with a few acres of timber, and was deeded by Hunt to Mary J. Wright. The consideration expressed was $3,130. Money was borrowed to pay a portion of this. This 83-acre tract was conveyed by Mary J. Wright and her husband to Hall, March 5, 1908, for $8,000. On the same date, Hall and wife executed a mortgage to Mary J. on the same land for $3,500. After the purchase of the farm in 1873, other tracts and city properties were deeded to her at different times, in 1888, 1893, 1900, 1902, 1903, 1904, 1907, and so on. The consideration for the different transfers is: One for $1.00, another for $50, $482, $500, $650, $1,000, $1,500, and so on. As said, after the death of Mary J., and

after George B. had been appointed executor, he conveyed some of the properties, and reinvested in other properties, taking the title in his own name, and thereafter conveying to different ones; and, 5 or 6 days after the death of his first wife, he procured quitclaim deeds from one or two of Mary J.'s relatives for the consideration of $1.00, taking the title in himself, and conveying whatever interest they had, if they had any, to all the property standing in her name; and one of such quitclaim deeds recites that she died intestate. It is claimed by appellees that these circumstances tend to show that, in making the conveyances to his wife, Mary J., or having others do so, it was not his intention to vest her with any beneficial interest, but that such conveyances were made to her as trustee. This matter will be referred to later; but we may say in passing that these matters might also show that he was seeking to procure a title in himself, and then convey it to others, for the purpose of defeating the devisees under the will of Mary J. It appears to us that conveyances by him after her death do not have a very important bearing on the question of his intention at the time the prior conveyances were made to her.

1. On the proposition as to whether George B. did furnish the money to purchase the property, the title of which was taken in Mary J., we may say that though, as said, there is no direct evidence, there are some circumstances tending to so show. Some of them have already been referred to. Neither seems to have had any considerable amount of money, and the properties purchased at different times may have been made off the properties. George B.'s sister testifies that he told her he did not have a 50-cent piece, when he moved onto the farm. Perhaps the strongest circumstance relied upon is the testimony of two or three relatives of George B.'s, and interested witnesses, as to declarations by Mary J. that George B. had bought the properties, or some of them, and that she was willing to execute deeds as he should request. These declarations were made a long time ago, and at least one of the witnesses so testifying was very old. Such testimony is, under the

rule, subject to much imperfection and mistake. Further-more, there is evidence, under the record, of contrary declarations by her. There is testimony as to improvements, the carpenter or contractor testifying that he made the contract with George B. to improve or partially rebuild a house, and in the sum of some $2,500 or $2,800, also for a furnace; but that the property so improved was, for the most part, the homestead of both, and that the benefit would inure to her, as to property which was their homestead. It does not appear to us that it has been proven clearly that George B. did furnish the money for all these properties, the title of which was taken in his wife. But conceding, without definitely deciding, that he did so, it is contended by appellants, and conceded by appellees, that the fact that it was so taken in his wife's name raises no presumption that the title was so taken in trust, but that, on the contrary, it is presumed that the wife was intended to be a beneficiary.

2. The rule being conceded, the burden is upon the plaintiffs. The deeds themselves are strong evidence of title. In addition to this, if George B. did furnish the money, the presumption is that he procured the title to vest in her as a gift, or for her protection. Under such circumstances, the rule is, and, where both parties are dead, ought to be, that, to overcome the deeds and the presumption, the evidence must be clear, satisfactory, and convincing. *Smith v. Smith,* 179 Iowa 1365, 1372; *DeFrance v. Reeves,* 148 Iowa 348; *Murphy v. Hanscome,* 76 Iowa 192. The rule is conceded. We are not so satisfied. We shall not go into the evidence very much in further detail. The circumstances relied upon by appellees have been, for the most part, related. Other circumstances are that George B. took possession of the property as he acquired it, and enjoyed its income; that he listed it with agents for sale, fixing the price and terms. But Mary J., too, was in possession, as well,—at least of a part of it; and he could well have been acting for her in listing it. His conduct after her death has been referred to, and his possession and acts are not inconsistent with possession and sales of the property as

executor; although appellees argue that he was treating her will as a nullity, except as to her property, which she inherited from her father. There may be other circumstances. It is, as argued, a question largely of intention. On the other hand, the aged sister of George B., testifying for plaintiffs, says that he put the property in her name for her protection; that he thought it was best to protect her; that he was poorly; and that it was to protect her, if he was taken away. Two of the witnesses apparently most strongly relied upon by plaintiffs gave testimony tending to show that the property was deeded to Mary J. for her benefit and protection. One of these, a nephew, testifies that Mary J. said that the record title was taken in her name because they figured that George B. would die first, and he wanted everything to go to her—to be left to her. Another says that she said that a reason the title was in her name was that, in case he should drop off, she would never have any trouble with the title, and no bother with lawyers. Indeed, it is alleged by plaintiffs, in one of the amendments to their petition, that the properties were conveyed to Mary J. with the express oral agreement that she should hold it in trust for him until his death, and at his death it was to vest in her. Taking into account all the circumstances, we are satisfied that it was George B. Wright's purpose to confer on his wife, Mary J., a benefit; or at least that plaintiffs have not overcome the presumptions by showing that such was not his purpose. If she was a beneficiary, she was not a trustee. Protection to her as grantee is inconsistent with a claim of resulting trust. George B.'s sister, 85 years of age, who had testified as to declarations by Mary J., in addition to testifying that the conveyances were made for Mary J.'s protection, as before stated, testifies in regard to Mary J.'s making her will, and that she said she wanted George B. to have the property, to handle it, and that she was willing to sign any papers in his trading; that George was quite a hand to trade around, and that she had it fixed so that George could handle the property just as he wanted to; that she said, "I am willing to sign everything, any

papers, if he has a mind to trade or sell." This was a long time after she had made the will. She said George wanted her to make a will.

It is not probable that she would make a will solely to dispose of the interest she had inherited from her father, amounting to about $150. The making of the will to dispose of all the property was but natural, and, we think, was in accord, at that time, with the wishes of both herself and her husband. Her will gave George B. just what she had said she wanted him to have. The inventory, filed by George B. as executor, does not list real estate, and appellees think this has a bearing upon his intention in taking the title to the different properties in her name, and shows that he considered that it was his property, and not hers. It is true that the inventory does not refer to any real estate. It does state, among other things, that the indebtedness of himself and wife amounted to $2,180, and recites, further:

"By virtue of the will of Mary J. Wright, and duly probated, I am the beneficiary, and the property, both real and personal, was by Mary J. Wright willed to me, to use, convey, sell, and control during my life."

And this is signed and sworn to by George B. It does not appear that George B., during his lifetime, made any claim to being the owner of these properties, but he remained silent at the time she made her will, at the time the farm was sold, at the time the homestead was purchased in her name, at the time the will was offered for probate, at the time he made his inventory, and during the seven years between his wife's death and his own. True, he managed, used, and sold the property after her death, but this was not inconsistent with his rights under her will, except as to some of his acts, which seem to indicate that he was attempting to get the property in his own name. Without enumerating other circumstances in the record, it is enough to say that we think plaintiffs have not overcome the presumptions by that clear and satisfactory evidence required in such a case, and that the trial court erred at this point.

Appellees cite, and the trial court relied upon, the fol-

lowing cases, to sustain its conclusions: *Cotton v. Wood,* 25 Iowa 43; *In Re Estate of Mahin,* 161 Iowa 459; *Copper v. Iowa T. & S. Bank,* 149 Iowa 336; *Smith v. Smith,* 132 Iowa 700; and *Culp v. Price,* 107 Iowa 133. These cases announce the rule of law as contended for by both parties hereto. It is more a question of evidence. The *Cotton* case was decided on demurrer, which admitted the allegation in the petition that the conveyance was made upon an express agreement to reconvey. The case is referred to and followed in the *Mahin* and *Copper* cases. In the *Mahin* case, it was proven that the money was not furnished by the grantee, but was by the other party, and that the evidence was sufficient to show that it was not a gift. In the *Copper* case, it was proved conclusively by the evidence that the wife furnished the money, and the title was taken in her husband. The question as to the presumption that it was a gift because of the relationship was not discussed, but it was held that there was no evidence to show it was intended as a gift. The *Smith* case does not bear directly on the point now under consideration, but was decided more on the question of estoppel, laches, and limitations. In the *Culp* case, it was held that the evidence was not sufficient, as against creditors, but was sufficient to show that the conveyance was not intended as an advancement to the son. The *Cotton* case is also cited in *Hayes v. Dean,* 182 Iowa 619, 626, where the rule is again stated as to the quality and quantity of proof required to ingraft a trust on the legal title, and it was held that the evidence there was not sufficient to establish a trust. The discussion in that case has a bearing, also, on some of the circumstances relied upon in the instant case. In that case, the title was taken in the wife, and the husband claimed to have furnished the money. We said that the mere fact that the husband paid the purchase price had no tendency to prove the alleged trust, and that the presumption in favor of plaintiff's title rested upon the fact that he did pay it, and caused the deed to be made to the wife. It was also said that the fact that the husband remained in pos-

session, and managed or used the land, did not afford the necessary proof, and the opinion quoted from another case that it was the natural thing for the husband to remain in possession of the land, and that his labor and service would be presumed to be in furtherance of the same purpose which prompted the original gift. It seems to us that this would be so in the instant case, where the original farm was purchased many years before, and other smaller properties were bought, from time to time, during the following 30 years, or thereabouts. We think the instant case is, in its facts, more like *Mossestad v. Mossestad,* 183 Iowa 311. It was held there that evidence that the husband, who paid for the land and had the title taken in his wife's name, to protect her from claims of his heirs if he died first, did not show that she held as trustee for him; and further, that such evidence did not show her to be a qualified beneficiary, depending on her surviving him. Appellees cite *Stonecipher v. Kear,* 131 Ga. 688 (127 Am. St. Rep. 248), in addition to the *Mahin* case, as holding that the presumption of gift, where the conveyance is to a wife, is not conclusive, but may be rebutted by proof, and that it is a question of intention and proof. Without further discussion of the cases or facts, we reach the conclusion that the presumption of gift has not been overcome by the appellees, and that Mary J. Wright had not only the legal title, but the equitable or beneficial title as well, to all the lands, and that the Nebraska and Colorado lands likewise belonged to her estate.

3. No notice was ever served upon George B. Wright, requiring him to elect whether he would take distributive share or take under the will; but appellants contend that his acts and conduct show that he nevertheless did elect to take under the will. Some of the circumstances bearing on this question have already been referred to, and we shall not take the time or space to refer to other evidence bearing thereon. There is nothing in the record tending to show that he was claiming a distributive share.

2. WILLS:
devise ( ?)
or dower ( ?) :
election.

The circumstance, with others, that he, in writing in the inventory filed by him, which was of record, claimed to take under the will, is, we think, one of the strong circumstances in the case.  His conduct, which is in the nature of an estoppel, shows an election to take under the will.

These questions are determinative of the case, so that it is unnecessary to discuss other questions argued.  The decree of the district court is reversed, and the cause remanded for a decree in harmony with this opinion.— *Reversed and remanded.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.