MARGARET V. COBURN, Appellant, v. DELMAR L. DAVIS, Appellee.

SEPTEMBER 28, 1928.

F. L. Meredith and Frank T. Jensen, for appellant.

Miller, Kelly, Shuttleworth & McManus, for appellee.

MORLING, J.—The decree in Coburn v. Davis was entered June 14, 1924. The purported assignment by Coburn to his wife, the applicant, is dated April 27, 1925. Coburn's former wife, Effie Coburn, sued him for divorce, and in January, 1925, obtained decree for divorce and for payments of alimony. Only one payment of alimony appears to have been made. On April 29, 1925, a judgment was entered in favor of the Drescher Company against Coburn for $262, with interest and costs. Davis was a party defendant to the Drescher Company case, but, as we infer, to foreclose him of some property interest. No judgment was rendered against Davis. The Drescher judgment, on June 22, 1925, was assigned to Davis. Execution issued on September 12, 1925, and was levied on the interest of Coburn in the decree in the action of Coburn v. Davis. The applicant, Margaret V. Coburn, gave notice of ownership and demand for release, verified by her attorney. Appraisers were appointed, and the property levied on (Coburn's interest in the decree) was appraised at $100. Notice of execution sale was published. The sale was twice postponed for want of bidders. Coburn's interest in the decree was sold, under the execution, at the adjourned sale, to Davis for $66.67. The defendant, Davis, founds on this execution sale his resistance to the application and his contention that he is the owner of Coburn's interest in the decree; that applicant has no interest therein, and is not entitled to reports.

Applicant's argument is based upon her abstract of the record. Since her argument was filed, appellee has filed an amendment to abstract entirely changing appellant's abstract.

There is no denial of the amendment. A number of questions of law and fact suggesting themselves to the reader are evidently considered by both parties as not involved in the case as it actually is, and will, therefore, be ignored by us. Hence no implications of the determination of any questions except those discussed are to be drawn.

I. One of appellant's points is:

"To prove a fraudulent conveyance, direct evidence of the conduct of the grantor, or grantee, should be introduced. If fraudulent conduct or words are not proven, strong circumstantial evidence of fraud must be introduced."

The evidence clearly shows that Coburn was in financial difficulties, and involved in criminal prosecutions. After Coburn's former wife got her divorce from him, his present wife procured a divorce from her then husband. The attorney who represented Coburn in his divorce proceedings represented applicant in her divorce proceedings. Coburn guaranteed to this attorney his fees in the applicant's case. The attorney has been unable to collect his fees and a printer's bill incurred in the case. This attorney investigated Coburn's affairs, and, as appears in the amended abstract, testifies, without objection:

"During my negotiation with Coburn, and, when I intimated that I might bring suit against him to collect the printer's bill and my own attorney's fees, he told me his money was all in his mother's name, and that nobody could get anything out of him unless he wanted to pay them. He told me that the house he had bought on Fifty-ninth Street had been bought in his wife's name. That is the same woman for whom I procured the divorce, and the second Mrs. Coburn. * * * He told me about the money, being in his mother's name, and having deeded the property to his wife, and for that reason it would do me no good to institute proceedings against him. * * * During the course of my investigation, I was unable to find assets belonging to H. C. Coburn of any kind within the state of Iowa. Even the automobile that he purchased was purchased in his wife's name. He told me that it was his money that paid for the automobile. * * * From my conversation with him, there was no consideration for the assignment upon which Mar-

garet V. Coburn is relying: that is, the assignment of this judgment in the case of Coburn v. Davis."

This is the only evidence in the case on the subject of consideration for the assignment of the judgment to applicant. Neither Coburn nor applicant has given testimony, and apparently they are keeping themselves out of the state. The purported assignment was made out and filed by Coburn's attorney, and on the eve of the recovery of the Drescher Company judgment against Coburn. There is further evidence in the case on the subject of Coburn's insolvency and fraudulent purpose, both of which are clearly shown. The evidence makes a prima-facie case of fraud, shifting to applicant the burden of going on with the evidence and proving good faith and valuable consideration. *Glenn v. Glenn,* 17 Iowa 498; *Brittain Dry Goods Co. v. Plowman,* 113 Iowa 624; *Sillyman v. King,* 36 Iowa 207; 27 Corpus Juris 488 *et seq.,* 798 *et seq.* This she has not done.

II. Appellant's next proposition (first in his argument) is:

"Gross inadequacy of consideration in the purchase of a contingent interest in property (a judgment) at sheriff's sale, in connection with other circumstances establishing fraud, makes the sale of the judgment invalid."

Appellant cites *Copper v. Iowa Tr. & Sav. Bank,* 149 Iowa 336, in which; on direct proceedings in equity, a sheriff's deed was set aside for gross inadequacy of consideration. The plaintiff there, without fault, was ignorant of the sale. There were failure to serve notice, an absence of bidders, and a failure to adjourn the sale, as well as other circumstances appealing to the conscience of the court. Appellant also cites *Glenn v. Miller,* 186 Iowa 1187. That was also an independent suit in equity, to set aside an execution sale. The judgment under which the sale was had was for $102.15 and costs. A levy was made upon property of the value of $76,950 to $102,600, the judgment defendant's interest in which was shown, without material dispute, to have been worth $6,000 to $10,000. The sheriff admitted that he knew the value of the lands. The judgment creditor was the only bidder. The judgment defendants' interests in the different tracts were bid in at nominal sums, amounting in all to $142.82. It is said:

"True, it is a general rule that mere inadequacy of consideration is not ordinarily sufficient to invalidate a judicial sale, otherwise fair and regular, but it is also true that the inadequacy may be so gross as, in the absence of explanation, to raise a presumption of undue advantage, and equity will intervene to correct the wrong. * * * The sheriff is not the mere agent or servant of the judgment creditor. He is the officer of the law, and his duty to execute the writ and collect the judgment is no more apparent or obligatory than is his duty to protect the debtor against an unjust or oppressive levy and sale. It is to that end that the statute gives him discretion to postpone the sale, in the absence of bidders, or when confronted by bidders who offer only bids grossly out of proportion to the value of the property; and abuse of that discretion will invalidate his sale."

In the case now before us, notice of sale was published. There was an appraisement. There were two postponements of the sale. The bid was for two thirds of the appraised valuation. See Code of 1924, Section 11741. Applicant offered evidence tending to show that the owner of the decree for accounting would be entitled ultimately to large sums. She did not offer to show knowledge thereof on the part of the sheriff. The smallness of the bid and the lack of bidders may be accounted for by the fact that the assignment to applicant appeared in the public records, which would tend to repel bidders and lower the bids. The applicant had actual knowledge of the levy, for she gave notice of ownership. If the property to be sold was of the value which she now claims, and she and Coburn were not endeavoring to defraud creditors, she naturally would have taken some steps toward payment of the small judgment or otherwise protecting her interest, beyond the mere giving of notice of ownership. The only fraud appearing in the record is that of Coburn and applicant. The principle on which an execution sale may be set aside for great inadequacy of price is that an inference of fraud arises therefrom. *Drake v. Brickner*, 180 Iowa 1166, 1175. The circumstances here, however, repel any inference of fraud on the part of the sheriff or the bidder. A sale will not be set aside for inadequacy for which the debtor or the claimant to the property is responsible. 23 Corpus Juris 678.

Furthermore, this is not an independent suit in equity to set aside the execution sale, nor is it a proceeding in the cause of Drescher Company v. Coburn, to set aside the execution therein issued and sale thereunder. The proceeding here is in the case of Coburn v. Davis, to compel the making of reports for the benefit of the applicant, who, to establish her right, collaterally attacks the execution and sale in the other action. Even though the sheriff's sale might have been vacated for gross inadequacy of price and fraud in a direct suit for that purpose, it cannot be held collaterally on that ground to be invalid. *Thomassen v. De Goey,* 133 Iowa 278; *Williams v. Dickerson,* 66 Iowa 105; *Foley v. Kane,* 53 Iowa 64; 23 Corpus Juris 682 *et seq.,* 685 *et seq.,* 693 *et seq.,* 757 *et seq.,* 678; *Howard v. Corey,* 126 Ala. 283 (28 So. 682).

III. Appellant's remaining point is that she "is entitled to the benefit of the rule: 'Mutual executions which are in the hands of the same officer may be set off, the one against the other.' Davis did not make reports according to the original decree. This concealment prevented the clerk of court, issuing an execution in favor of Mrs. Coburn, as the clerk did not know whether there was a balance due Mrs. Coburn."

Mrs. Coburn, on the record before us, was not, as against her husband's creditors, the owner of the judgment. She had no execution. If she had been the owner, the record does not show that she would have had a right to an execution.

IV. Appellant urges that Davis committed a fraud in purchasing the judgment for $66.67; that he did this for the purpose of defeating the judgment on which the reports are sought; that he had notice of the assignment to applicant; that he was a joint debtor in the Drescher Company judgment; that he has disregarded the spirit and letter of the original judgment, refused to make reports, concealed payments, and his reports are insufficient. To what we have said, it need only be added that we find no evidence to sustain the charge of fraud.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.