**SOUTH OTTUMWA SAVINGS BANK, Appellee,**

v.

**Larry L. SEDORE and Carolyn J. Sedore, Appellants.**

No. 84–1596.

Supreme Court of Iowa.

Oct. 15, 1986.

**350**

David J. Hester and Thomas M. Walter of Johnson, Bauerle, Hester & Walter, Ottumwa, for appellants.

Michael C. Vinyard of Vinyard & Curran, Ottumwa, for appellee.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, WOLLE, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

Larry and Carolyn Sedore (Sedores) appeal from trial court's judgment (1) quieting title to 620 acres of real estate in favor of South Ottumwa Savings Bank (Bank); (2) awarding the Bank possession of that real estate; and (3) awarding the Bank $15,900 in compensatory damages, this amount representing the fair rental value of the real estate in question for the year 1984. The Sedores also appeal trial court's appointment of a receiver to take charge of the real estate during the pendency of the Bank's action. *See* Iowa Code § 680.1 (1983). Finding no error, we affirm.

On February 21, 1981, the Bank filed a foreclosure petition against 620 acres of farmland owned by the Sedores. A decree of foreclosure was entered November 30, 1981. February 16, 1982, the Bank purchased the property foreclosed upon at a publicly held execution sale. Almost two years later, and after an intervening bankruptcy proceeding, the Bank, on April 12, 1984, filed a sheriff's deed to the 620 acres. May 4, 1984, a writ of possession was served on the Sedores, ordering the Sedores to deliver possession of the property to the Bank.

Despite knowledge of the foreclosure action, execution sale, sheriff's deed, and eventually the writ of possession, the Sedores, between April 20, 1984, and May 18, 1984, proceeded to plant crops on a portion of the 620 acres. When the Bank learned of this activity, it filed a petition under Iowa Code chapter 646 seeking possession of the property as well as damages. *See* Iowa Code §§ 646.1–.25 (1983). The Bank later filed a quiet title action, *see id.* §§ 649.1–.8, which by stipulation was consolidated with its chapter 646 petition.

Responding to the Bank's claims, the Sedores filed a motion to set aside all or part of the February 16, 1982, execution sale and requested that trial court quiet title to the property in their name. To support their position, the Sedores pointed to the notice of execution sale given by the sheriff, which omitted the legal description of a particular portion of the 620 acres sold at the sale. The portion omitted from the notice was the same property on which the Sedores planted crops in 1984.[1]

1. The parties agree a portion of the legal description was omitted by the sheriff. The full description should have been as follows:

The Northwest Fractional Quarter of Section 18, (excepting a tract of land commencing at the Northwest corner thereof running thence East 24 rods more or less to the Northeast Corner of the Cemetery, thence South along the East line of said Cemetery 488 feet more or less to the center of the public highway formerly known as the Floris and Iowaville Road, thence in a Westerly direction along the center of said highway to the section line at a point approximately 31 rods and 12 feet South of the Northwest Corner of said Section; thence North to the place of beginning; also excepting a strip of land one rod wide off the East side of the Northwest ¼ of

Following trial, the court entered judgment in favor of the Bank. Trial court rejected the Sedores' motion to set aside the execution sale in whole or in part. The Sedores now appeal.

The Sedores assert the sheriff's failure to describe properly the property to be sold is itself sufficient to set aside all or part of an otherwise proper execution sale. Like trial court, we conclude under the circumstances of this case that Sedores' contention must be rejected.

■ Iowa law erects a strong presumption in favor of an execution sale. In the absence of fraud, collusion, or other substantial and justifiable prejudice, mere irregularities in the procedures leading to or following an execution sale will not support a debtor's motion to set aside the sale.[2] *See Kriv v. Northwestern Securities Co.,* 239 Iowa 240, 242–43, 29 N.W.2d 865, 866 (1947); *Copper v. Iowa Trust & Savings Bank,* 149 Iowa 336, 342–45, 128 N.W. 373, 375 (1910); *Bowden v. Hadley,* 138 Iowa 711, 713–15, 116 N.W. 689, 689–90 (1908); *Cunningham v. Felker,* 26 Iowa 117, 119–20 (1868); *Coriell v. Ham,* 4 Greene 455, 459–60 (Iowa 1854). In this case, the Se-

dores, who assert no fraud or collusion, have shown no substantial and justifiable prejudice resulting from the omission.

■ Without question, the Sedores knew what property was intended to be sold at execution. They not only entered into the original mortgage agreement with the Bank but were a party to the subsequent foreclosure proceedings. In both instances, the property at issue was fully and accurately identified. Further, the sheriff's notice of sale published in the local newspaper and expressly directed to the Sedores accurately described the real estate and provided the time and place of the public sale. Only in the notice of sale personally served on the Sedores was there the inadvertent omission of a portion of the property to be sold. We conclude the Sedores have no basis on which to claim a lack of actual notice of the property to be sold.

■ Despite a record that establishes the Sedores had actual notice of the property intended to be sold, they failed to challenge the sheriff's inadvertent omission until after the execution sale had taken place, the redemption period had passed,[3] the

the Northeast ¼ of the Northwest ¼ of the Northwest ¼ of Section 18 intersecting State Road running East and West on the South) and the Northeast ¼ of the Southwest ¼ of Section 18 also, the Southeast Quarter of the Southwest Quarter of Section Seven (7), all in Township 70 North, Range 12 West; ALSO: The Southwest Quarter of the Southwest Quarter of Section Two (2); the Northeast Quarter of Section Ten (10); and the *Northwest Quarter of Section Eleven (11); all in Township* Seventy (70) North, Range Twelve (12) West of the 5th P.M. in Davis County, Iowa.

The lines underscored represent that portion of the legal description omitted in the sheriff's notice of sale.

2. The Sedores attempt to gain support for their position from Iowa Code § 626.79 and cases that have construed that provision. We conclude § 626.79 has no applicability here. First, § 626.79 by its very terms applies only to motions filed "within ninety days" of the execution sale. The motion made by Sedores in this action was filed more than two years after the execution sale and thus for § 626.79 purposes was untimely. ·Second, even assuming that Sedores' reliance on it is not untimely, § 626.79

requires a sale to be set aside only if the debtor receives no notice, actual or otherwise, of the sale or if the notice received by the debtor is so deficient that it is in effect no notice. *See Cooley v. Wilson,* 42 Iowa 425, 428 (1876); *Fleming v. Maddox,* 30 Iowa 239, 240–43 (1870); *Jensen v. Woodbury,* 16 Iowa 515, 518 (1864). Here, the Sedores received notice of the sale and despite the sheriff's omission were aware of the property to be sold at that sale.

3. The Sedores raise various contentions concerning the effect of a bankruptcy action on the statutory right of redemption. We note the Sedores filed bankruptcy on February 14, 1983, just two days prior to the expiration of the redemption period. Subsequently, on April 5, 1984, the bankruptcy court lifted the automatic stay and allowed the redemption period to run. The period of redemption then expired two days later. Assuming, for purposes of this action only, that the automatic stay had any effect on the running of the Sedores' right to redeem, *see Johnson v. First Nat. Bank,* 719 F.2d 270 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Lally,* 51 B.R. 204 (N.D.Ia.1985), the statutory period of redemption expired prior to the filing of the sher-

sheriff's deed had been issued and filed, and the writ of possession had been served. Further, the record also establishes the Sedores at an earlier time had challenged the sale on other grounds and, despite full opportunity and incentive to do so, failed to raise any challenge to the sufficiency of the sheriff's notice or the effect of the inadvertent omission. In light of this delay in raising any challenge to the sufficiency of the notice, it is not surprising the Sedores were unable to muster evidence of substantial and justifiable prejudice sufficient to overcome the strong presumption in favor of upholding judicial sales.[4]

■ Fully supporting our conclusion is the early Iowa decision in *Cooley v. Wilson*, 42 Iowa 425 (1876). The facts established and the law applied in that opinion are largely indistinguishable from the present controversy. In that case, as here, debtor knew what property was intended to be sold, apparently knew the sheriff's description was erroneous, attended the sale, and yet failed to call the error to the attention of the sheriff or the judgment creditor. *See id.* at 427–28. Further, no collusion or fraud on the part of the sheriff or the judgment creditor was asserted or proven. *See id.* at 428. At bottom, here as in *Cooley*, when the debtor knows (or reasonably should have known) of the irregularity prior to sale, and fails to assert that irregularity until after the redemption period has passed and title is transferred under a sheriff's deed, he or she is effectively estopped to assert this irregularity, absent proof of collusion or fraud. *See id.* at 428–29.

Trial court properly quieted fee simple title in the Bank and awarded the Bank full possession of the property. The measure or amount of damages granted by trial court has not been appealed by either side and thus need not be considered here.

As a final point, the Sedores challenge trial court's appointment of a receiver to take charge of the property while the controversy surrounding it was resolved. While this point is likely moot given our prior discussion, we will address it briefly.

■ Under Iowa law, a party requesting appointment of a receiver may be entitled to have one appointed if the party establishes a "probable" interest in the property giving rise to the controversy and further establishes the "property, or its rents or profits," are in "danger of being lost or materially injured or impaired." Iowa Code § 680.1 (1983). Once a petitioning party has made these showings, trial court "may appoint a receiver to take charge of ... [the] property" if trial court is "satisfied that the interests of one or both parties will be thereby promoted, and the substantial rights of neither unduly infringed." *Id.* The decision whether to appoint a receiver is a discretionary one to be made by trial court, and we will reverse trial court's decision only if an abuse of discretion can be demonstrated by the challenging party. *Smith v. Bitter*, 319 N.W.2d 196, 201 (Iowa 1982); *see Parry v. West*, 197 N.W. 297, 297 (Iowa 1924) (per curiam).

■ Here, the Bank had an interest in the property at issue, and trial court could reasonably have concluded the actions of the Sedores threatened to impair materially the Bank's interest. Significantly, the Sedores have pointed to no evidence suggest-

iff's deed (April 12, 1984), the planting of the crops (between April 20 and May 18, 1984), and service of the writ of possession (May 4, 1984).

**4.** The Sedores assert the existence of a security agreement covering the crops planted by it in 1984 justifies the adoption of their position. This argument is without merit. The security interest in question was not entered into until June 1984. Prior to entering into the agreement, the Sedores were fully aware of all the foregoing activities with respect to the property, including the May 4, 1984, writ of possession.

Clearly, the Sedores had no reasonable basis on which to believe they were justified in planting the crops. Further, the irregular notice justification relied on by the Sedores was one known or one that should have been known to them for over two years. Any prejudice caused to the Sedores as a result of entering into the security agreement under these circumstances cannot serve to void the Bank's interest. The prejudice claimed by a debtor must legitimately flow from the irregularities asserted.

ing trial court's action prejudiced any interest they may have had in the property. We find no abuse of discretion on the part of trial court.

Our thorough review of the Sedores' other contentions convinces us they are without merit. We affirm trial court's judgment.

AFFIRMED.